409 Mass. 336 (1991)
567 N.E.2d 183
MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC., & another[1]
vs.
ATTORNEY GENERAL (and a companion case).[2]
Supreme Judicial Court of Massachusetts, Suffolk.
October 1, 1990.
February 19, 1991.
Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.
H. Glenn Alberich (Alice E. Moore with him) for Massachusetts Wholesalers of Malt Beverages, Inc., & others.
Toni G. Wolfman for Massachusetts Soft Drink Association & others.
*337 George K. Weber, Assistant Attorney General (Pasqua Scibelli, Assistant Attorney General, with him) for the Attorney General.
John Mirick, for Consolidated Beverages, Inc., was present but did not argue.
Larry L. Varn & William J. Curry for Burke Distributing Corp., Stuart R. Rossman & John F. Donohue for Coca Cola Bottling Company of New England, John F. Adkins & Terry J. Tsagaris for L. Knife & Sons, Inc., Howard M. Miller & Daniel A. Shapiro for Brockton Wholesale Beverage Co., John Houlihan for Quality Beverage, Inc., & James Quarles for United Liquors Limited & others, joined in a brief.
O'CONNOR, J.
This case requires us to construe the so-called "bottle bill," G.L.c. 94, §§ 321-327 (1988 ed.), and, more particularly, § 323 (g). Section 323 (g) provides as follows: "Any bottler or distributor who receives deposits and/or handling charges under this chapter shall segregate said deposits or handling charges in a fund which shall be maintained separately from all other revenues. Said bottler or distributor shall report on a monthly basis to the alcoholic beverage control commission in a manner prescribed by said commission, the amount of said deposits or handling charges received and the amount refunded." There are two questions before us: (1) Do the "deposits" and "handling charges" referred to in § 323 (g) become the property of the bottlers and distributors when the bottlers and distributors receive them, or do the bottlers and distributors hold them in trust for consumers with the result that unclaimed deposits ultimately escheat to the Commonwealth as abandoned property? (2) Must bottlers and distributors maintain separate bank accounts for those "deposits" and "handling charges," or would they comply with § 323 (g) by only accounting for them separately, using standard and consistent accounting practices, thereby allowing the bottlers and distributors to commingle those and other monies?
This controversy arose when the Alcoholic Beverages Control Commission ("ABCC"), the agency responsible for overseeing *338 the reporting and refunding of deposits under § 323 (g), sent letters to certain bottlers and distributors to inform them of the requirements of the bottle bill and associated ABCC regulations, 204 Code Mass. Regs. §§ 3.00-3.08. The letters indicated that, if the companies did not comply with the regulations, the ABCC would refer the matter to the Attorney General for enforcement pursuant to G.L.c. 94, § 327. Massachusetts Wholesalers of Malt Beverages, Inc., and Massachusetts Soft Drink Association then brought an action seeking a declaration that "section 323 (g) is fully satisfied by establishment and maintenance of an accounting fund for container refund values and/or handling charges," and also seeking preliminary and permanent injunctions restraining the Attorney General from taking any action against them that would be inconsistent with that statutory interpretation. On the same day that the Attorney General answered that complaint, the Commonwealth commenced an enforcement action against several members of Massachusetts Wholesalers of Malt Beverages, Inc., and Massachusetts Soft Drink Association. The Commonwealth alleged that the defendants had violated § 323 (g) by not depositing the money in controversy in separate bank accounts. The Commonwealth further asserted that the defendant bottlers and distributors held that money in trust for consumers, and that the defendants had violated their fiduciary duty by commingling the money with their own money.
The two actions were consolidated in the Superior Court, and the parties cross-moved for summary judgment in both actions. After a hearing on those motions, a judge ordered the entry of a judgment in the action initiated by Massachusetts Wholesalers of Malt Beverages, Inc., and Massachusetts Soft Drink Association declaring, favorably to the Attorney General's position, that § 323 (g) "requires the bottlers and distributors to segregate the deposits they collect in separate bank accounts for consumers until consumers seek the refunds to which they are entitled." In addition, the judge ordered that "[j]udgment shall also enter for the Commonwealth on Count I" in the action begun by the Commonwealth. *339 Count I was the Commonwealth's assertion that § 323 (g) required separate bank accounts. In that same action commenced by the Commonwealth, however, the judge ordered the entry of judgment for the bottlers and distributors on the Commonwealth's Counts II and III. In those counts, the Commonwealth asserted that the defendants held the "container deposits" in trust for "Massachusetts consumers." In explanation of her order for judgment in the consolidated actions, the judge reasoned that "the plain meaning of the words in § 323 (g), combined with a workable construction of the entire statute, compel[led her] to reject the bottlers' and distributors' interpretation of the first sentence of § 323 (g)." She also reasoned, however, that the "absence of legislative direction, express or implied, [with respect to the disposition of `unclaimed deposits'] leads to the fair inference that the unclaimed deposits belong to the bottlers and distributors."
Following the above-described order, the judge reported the matter to the Appeals Court pursuant to G.L.c. 231, § 111 (1988 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and stayed further proceedings pending an Appeals Court determination. We then granted the Commonwealth's application for direct appellate review. We now affirm in part and reverse in part the order of the Superior Court judge. We affirm the determination that the "unclaimed deposits" are the property of the bottlers and distributors under G.L.c. 94, § 323 (g). We reverse the judge's decision that § 323 (g) requires bottlers and distributors to establish and maintain a separate bank account for "deposits and/or handling charges."
General Laws c. 94, § 321, defines several terms used throughout the bottle bill. We set out the relevant parts of some of those definitions as follows: A "`[b]everage container'" [is] any sealable bottle, can, jar, or carton [not including those made of biodegradable material] ... produced for the purpose of containing a beverage." The term, "`[r]euseable beverage container,' [means] any beverage container so constructed and designed that it is structurally *340 capable of being refilled and resold by a bottler at least ten times after its initial use." "Any person who purchases a beverage in a beverage container for use or consumption with no intent to resell such beverage [is a] `[c]onsumer.'" A "[d]ealer" is "any person ... who engages in the sale of beverages in beverage containers to consumers in the commonwealth." "Distributor" is defined by § 321 as "any person who engages in the sale of beverages in beverage containers to dealers in the commonwealth including any bottler who engages in such sales."
Chapter 94, § 322, provides in pertinent part: "Every beverage container sold or offered for sale in the commonwealth shall have a refund value of not less than five cents." Section 323 provides in pertinent part as follows: "(a) Every consumer shall deposit with the dealer the refund value of each beverage container purchased from that dealer; (b) [With an exception not here material], a dealer shall accept from any person during his business hours any empty beverage container of the type, size and brand sold by the dealer within the past sixty days and shall pay that person the refund value of each beverage container returned; (c) [With an exception not here material], a distributor shall accept from any dealer any empty beverage container of the type, size and brand sold by the distributor within the past sixty days and shall pay the dealer the refund value of the beverage container plus a handling fee of at least one cent per container if the empty beverage container is presented at the time of and at the location at which the dealer obtains filled beverage containers from the distributor; (d) [With an exception not here material], a bottler shall accept from a distributor or a dealer any empty reuseable beverage container of the type, size and brand sold by the bottler within the past sixty days and shall pay the distributor or dealer the refund value of the reuseable beverage container plus a handling fee of at least one cent per container if the empty reuseable beverage container is presented at the time and at the location where the distributor or dealer obtains filled reuseable beverage containers from the bottler; provided, however, that a *341 bottler other than a bottler of soft drinks manufacturing in the commonwealth who offers to refund deposits in accordance with this section, shall not require a distributor to deposit with the bottler the refund value of a beverage container which is not reuseable, nor shall a bottler require of a distributor that beverage containers which are not reuseable, be presented to the bottler at the location where the distributor obtains full beverage containers."
Our task  not a simple one  is to construe the provision in § 323 (g) that "[a]ny bottler or distributor who receives deposits and/or handling charges under this chapter shall segregate said deposits or handling charges in a fund which shall be maintained separately from all other revenues." Our interpretation of § 323 (g) necessarily involves the interpretation of other "bottle bill" sections as well. We observe at the outset that, apart from § 323 (g), the only transaction which the bottle law expressly identifies as involving a "deposit" is a consumer's purchase of a beverage container from a dealer. Section 323 (a) requires the consumer to "deposit with the dealer the refund value" of the container.
Notably, the law does not require dealers to pass those deposits along to bottlers or distributors or in any way to "deposit" refund values with bottlers or distributors. The dealer's only obligation is to pay consumers for empties. G.L.c. 94, § 323 (b). Indeed, for all that appears, the usual course is that bottlers and distributors receive payment for the beverage containers they sell before the dealers receive the consumers' deposits in conjunction with consumer purchases. Thus, the "deposits" that bottlers and distributors "receive," within the contemplation of § 323 (g), cannot be identified with, or viewed as originating from, the deposits made by consumers. The "deposits and/or handling charges" can only be viewed as a portion of the purchase price of filled containers paid by dealers to distributors and by distributors to bottlers. Presumably, the money contemplated by the Legislature as constituting "deposits and/or handling charges" is simply a percentage of that purchase price that would be *342 enough to enable the bottlers and distributors to meet their statutory obligation to pay the refund value of beverage containers returned to them.
It is in that context that we consider whether § 323 (g) reveals a legislative intent that beneficial ownership of the "deposits and/or handling charges" received by bottlers and distributors resides not in the bottlers and distributors but, instead, in the consumers, or, with respect to unclaimed deposits, in the Commonwealth by application of principles of abandoned property law. The motion judge considered significant, as do we, that "there is no express provision [in the bottle law] concerning the disposition of unclaimed deposits.... The absence of legislative direction, express or implied, leads to the fair inference that the unclaimed deposits belong to the bottlers and distributors." Furthermore, contrary to the Attorney General's argument, the statutory language is not fairly susceptible of interpretation as creating a trust relationship between bottlers and distributors as trustees for the benefit of consumers. Even if one could identify a trust res, and even if it were fairly arguable that consumers "entrust" their deposits to dealers, propositions that are doubtful at best, it is not fairly arguable that, under the statute, consumers entrust their deposits to bottlers and distributors with whom they have no dealings, or that bottlers and distributors somehow become custodians of consumers' deposits. We are satisfied that bottlers and distributors do not hold "deposits and/or handling charges" in trust for consumers.
We also decline to impose a constructive trust on unredeemed beverage container refund values as the Attorney General urges us to do. "A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information." Barry v. Covich, 332 Mass. 338, 342 (1955). See *343 Yamins v. Zeitz, 322 Mass. 268, 272 (1948). None of the conditions required for the imposition of a constructive trust as set forth above is present in this case.
Because there is no fiduciary relationship between bottlers and distributors, as fiduciaries, and consumers, as beneficiaries, unclaimed deposits do not escheat to the Commonwealth as property abandoned by consumers. Instead, as the motion judge concluded, unclaimed "deposits" belong to the bottlers and distributors.
Our answer to the question of ownership of the "deposits and/or handling charges" received by bottlers and distributors strongly suggests, even if it does not compel, our answer to the second question confronting us, that is, must bottlers and distributors maintain separate bank accounts for those monies, or does § 323 (g) only require separate accounting for them using standard and consistent accounting practices. We conclude that, in the absence of explicit language requiring physical segregation of monies or the establishment of separate bank or escrow accounts, it is highly unlikely that the Legislature intended to prohibit bottlers and distributors from commingling a portion of their own money with other money belonging to them. The statute does not contain such explicit language (although earlier, rejected versions of § 323 [g] did).
Moreover, the Legislature's establishment in other statutes of separate "funds" merely as accounting entities suggests a similar intention with respect to G.L.c. 94, § 323 (g). For example, G.L.c. 29, § 1 (1988 ed.), relating to State finance, defines the word, "fund," as "an accounting entity established by general or special law to record all the financial resources or revenues together with all related expenditures or liabilities that are segregated for a particular purpose" (emphasis added). See also St. 1983, c. 233, § 68 (Economic Development Fund); G.L.c. 90, § 34 (Highway Fund).
We briefly address one final argument. At the end of the 1989 session, the Legislature enacted an amendment to the bottle bill, most of which took effect on January 4, 1990. St. 1989, c. 653, §§ 68-72, 235-237. The amendment, which focuses *344 on non-reusable beverage containers and is the subject of further litigation in the Superior Court between the parties here, adds a subsection (h) to c. 94, § 323, and adds §§ 323C-323D. The amendment does not address the status of deposits or container refund values collected or paid out prior to its effective date, with one minor exception, and thus, the parties agree, the amendment does not govern the container refund values at issue in this case. Each party does contend, however, that the amendment tends to support its interpretation of § 323 (g). We reject those arguments. "What the ... legislation involved in this case means cannot rationally be influenced by [subsequent] legislation." Coca Cola Bottling Co. v. Commissioner of Rev., 393 Mass. 726, 729-730 n. 3 (1985).
The determination by the judge in the Superior Court that the "unclaimed deposits" are the property of the bottlers and distributors under G.L.c. 94, § 323 (g), is affirmed. The determination that § 323 (g) requires bottlers and distributors to establish and maintain a separate bank account for "deposits and/or handling charges" is reversed. The case is remanded for further proceedings consistent with this opinion.
So ordered.
NOTES
[1] Massachusetts Soft Drink Association.
[2] Attorney Gen. vs. Pepsi-Cola Metropolitan Bottling Co.