ALEX STEINBERGH & another,[1] trustees,[2] *vs.* CITY OF
CAMBRIDGE & another.[3]

Middlesex. September 15, 1992. - December 10, 1992.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Due Process of Law*, Taking of property, Rent control. *Constitutional
Law*, Taking of property, Equal protection of laws, Rent control. *Mu-
nicipal Corporations*, Rent control.  *Real Property*, Condominium.
*Judgment*, Preclusive effect.  *Regulation. Rent Control*, Damages.

In an action by property owners seeking an award of damages against a
city on the theory that the city's unlawful restriction on their right to
sell individual condominium units was unconstitutional and deprived
them, to their financial detriment, of the right to sell individual condo-
minium units from the date the city's rent control board denied the
plaintiffs' application for removal permits until the date this court in-
validated the challenged portion of the city's ordinance, the judge cor-
rectly concluded that the present action was not precluded by this
court's judgment invalidating the challenged portion of the ordinance,
where the plaintiffs' damages claim was not adjudicated in the prior
action, nor were the plaintiffs obliged, at their peril, to include in the
prior action a claim for damages based on constitutional violations.
[739-740]
A city's application to plaintiff property owners of an ordinance provision
denying the owners of more than one condominium unit in a building
the right to sell individual condominium units unless the city's rent con-
trol board granted a removal permit or the tenant had an exemption
certificate did not constitute an uncompensated, temporary regulatory
taking of property in violation of art. 10 of the Massachusetts Declara-
tion of Rights or the Fifth Amendment to the Constitution of the
United States, applicable to the States through the Fourteenth Amend-
ment, where the challenged ordinance neither authorized, directed, or
otherwise involved a physical instrusion into the owners' property, nor
denied all economically beneficial or productive use of the owners' in-

[1] R. Stanley Bowden.
[2] Of 16 Chauncy Trust.
[3] Rent Control Board of Cambridge. We shall refer to the defendants
collectively as the "city."

terest in the property, nor interfered with the owners' investment-based expectations, and where the challenged ordinance substantially advanced the purpose of rent control. [741-747]

A city's application to plaintiff property owners of an ordinance provision denying the owners of more than one condominium unit in a building the right to sell individual condominium units unless the city's rent control board granted a removal permit or the tenant had an exemption certificate did not deny to the property owners due process of law under the State and Federal Constitutions or equal protection of the laws under the Constitution of the United States. [748]


CIVIL ACTION commenced in the Superior Court Department on February 9, 1990.

The case was heard by *Wendie I. Gershengorn*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Frederick B. Hayes, III*, for the plaintiffs.

*Thomas J. Urbelis* (*Devra G. Bailin* with him) for the defendants.

WILKINS, J. In *Steinbergh* v. *Rent Control Bd. of Cambridge*, 406 Mass. 147 (1989) (*Steinbergh I*), this court held that the city of Cambridge lacked authority to adopt a particular ordinance provision intended to discourage the unlawful removal of rent-controlled housing units from the rental market. That provision, a subsection of the city's ordinance concerning the removal of rent-controlled properties from the market, purported to restrict the sale of individual condominium units by a property owner owning more than one condominium unit in a building. The ordinance provision denied such an owner the right to sell individual condominium units unless the rent control board of Cambridge (board) granted a removal permit or the tenant had an exemption certificate. See *id.* at 148 n.4, for the specific provision.

In this action, commenced on February 9, 1990, the same plaintiff property owners who were involved in *Steinbergh I* seek an award of damages against the city on the theory that the city's unlawful restriction on their right to sell individual

condominium units was unconstitutional and deprived them, to their financial detriment, of the right to sell individual condominium units from September 14, 1987 (the date the board denied the plaintiffs' application for removal permits), until November 20, 1989 (the date this court's opinion in *Steinbergh I* was released invalidating the challenged portion of the ordinance).

The plaintiffs' principal contention is that the city's application to their property of the challenged ordinance provision constituted an uncompensated, temporary regulatory taking of property in violation of art. 10 of the Massachusetts Declaration of Rights and the Fifth Amendment to the Constitution of the United States, applicable to the States through the Fourteenth Amendment. *Chicago, B. & Q. R.R.* v. *Chicago*, 166 U.S. 226, 241 (1897). The plaintiffs further claim a denial of due process of law under the State and Federal Constitutions and a denial of equal protection of the laws under the Constitution of the United States.

Our discussion of these issues will focus on the claimed violations of the Constitution of the United States. The plaintiffs do not argue that, acting under the Constitution of the Commonwealth, this court should apply any principle different from that established by the United States Supreme Court. In considering whether economic regulations satisfy due process, we have established no substantially different guiding standards under the Commonwealth's Constitution than the Supreme Court has established under the Constitution of the United States. See *Opinion of the Justices*, 408 Mass. 1215, 1217-1218 (1990); *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 373 n.8 (1979). Although a similarity in standards under the "takings" clauses of the two Constitutions has not been as clearly established, the plaintiffs have advanced no reason why we should create takings principles more favorable to them than those developed under the Federal Constitution.

The case was heard below on cross motions for summary judgment.[4] The city contended that the judgment entered in *Steinbergh I* barred the plaintiffs' claims for damages and that, in any event, as a matter of law there had been no uncompensated taking or other constitutional violation. There appears to be no dispute of material fact. The motion judge rejected the city's argument that the plaintiffs were barred by the earlier judgment from presenting their constitutionally-based claim for damages but agreed with the city that its conduct did not amount to a taking or to a denial of due process of law or equal protection of the laws. We allowed the plaintiffs' application for direct appellate review of the judgment entered in the city's favor. We affirm the judgment.

The city's rent control regulations are authorized by St. 1976, c. 36. The provision in the city's regulations whose effect is in controversy here was adopted on June 29, 1981. The plaintiffs purchased the fifty-three condominium unit property at 16 Chauncy Street on August 1, 1986. On September 14, 1987, the board ruled that the challenged regulation barred the plaintiffs from selling individual condominium units without permission from the board. During the period from September, 1987, to November, 1989, the plaintiffs received net income from the property of approximately $120,000. After *Steinbergh I* was decided in November, 1989, the plaintiffs sold thirty-six units to individual buyers and on December 31, 1989, they still owned seventeen units. The plaintiffs assert that the market value of their condominium units declined between September, 1987, and November, 1989, and seek recovery from the city for their losses, which they allege to be approximately $374,000.

1. The judge was correct in concluding that this action was not foreclosed by the judgment entered in *Steinbergh I*. The plaintiffs' claim for damages for a temporary regulatory taking is precluded only if their damage claim was or should

___

[4]The plaintiffs sought judgment in their favor on the issue of liability only.

have been adjudicated in *Steinbergh I. Heacock* v. *Heacock*, 402 Mass. 21, 23 (1988).

The damages claim was not adjudicated in *Steinbergh I*. The plaintiffs' amended complaint in *Steinbergh I*, which was an action for judicial review of the board's determination, pursuant to St. 1976, c. 36, § 10, did not seek damages for a temporary taking of their property or for any other constitutional violation. That is hardly surprising in an appeal from the decision of an agency that had no authority to award damages. The amended complaint alleged that, in ruling that the regulation applied to the plaintiffs, the board acted in excess of its statutory authority and, in various other ways, in violation of law (including in violation of the State and Federal Constitutions). By that complaint, the plaintiffs sought a ruling that they were exempt from the challenged ordinance provision, but they made no allegation or prayer concerning an award of damages because of a taking of property or other constitutional violation. Indeed, a precise determination of damages prior to a final ruling that the regulation was invalid and that a damage award was appropriate would not have been possible.

The plaintiffs were not obliged, at their peril, to include in *Steinbergh I* a claim for damages based on constitutional violations. *Steinbergh I* was an appeal governed by G. L. c. 30A and based on the agency record. This court expressly did not reach the plaintiffs' constitutional challenges to the regulation, after concluding that the regulation was beyond the rent board's authority. *Steinbergh I, supra* at 148. The plaintiffs were not reasonably able to seek damages until the basis for their takings claim was established. Only after the regulation was ruled unlawful could the plaintiffs determine precisely whether the delay had caused them any harm. A regulatory takings claim often is not mature until the validity of the challenged local regulation has been determined. See *Corn* v. *Lauderdale Lakes*, 904 F.2d 585, 587 (11th Cir. 1990). Claim preclusion principles do not reach such a contingent claim so as to require that it be asserted in the first action, if it is to be asserted at all.

2. The city did not make a taking of property for which the plaintiffs are entitled to compensation under the takings clauses of the State and Federal Constitutions. The general concept that a government regulation that "goes too far" is a taking was expressed seventy years ago. See *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 415 (1922). The problem over the years has been to define how far "too far" is. When the claim is that government conduct, not amounting to a permanent physical occupation or confiscation of property, involves a regulatory taking, the analysis is peculiarly fact dependent, involving "essentially ad hoc, factual inquiries." *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978). See *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 209 (1988).

The alleged taking does not fall within either of the two categories of governmental regulatory action that constitute compensable takings without regard to other considerations, such as the public interest sought to be advanced. See *Lucas* v. *South Carolina Coastal Council*, 112 S. Ct. 2886, 2893 (1992). First, the challenged regulation did not authorize, direct, or otherwise involve a physical intrusion into the plaintiffs' property. See *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 831 (1987); *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432-433 n.9 (1982); *Frago-poulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 309 (1990). Second, the challenged regulation did not deny all economically beneficial or productive use of the plaintiffs' interest in the property. See *Lucas* v. *South Carolina Coastal Council*, supra at 2893-2895; *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980). The plaintiffs collected rents while they pursued their challenge to the regulation; they received a return on their investment during that time; and they could seek rent adjustments in order to obtain "a fair net operating income for such units" (St. 1976, c. 36, § 7 [a]). This is not, therefore, a case in which a local regulation denied all use of the affected property while the lawfulness of a regulation was being challenged. See *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U.S. 304,

321 (1987) (landowner who successfully challenges, as a temporary taking, land use regulation that denies all use of its property may recover damages incurred while challenge is pending).[5]

If the governmental regulation neither results in a physical invasion of the property nor deprives a landowner of all economically beneficial use of land, there may nevertheless be a regulatory taking based, in part, on the regulation's economic impact on the property as a whole and the extent to which the regulation has interfered with a property owner's distinct investment-based expectations.[6] See *Penn Cent. Transp. Co. v. New York City, supra* at 124-125, 130-131; *Flynn* v. *Cambridge*, 383 Mass. 152, 160 (1981). Cf. *Wheeler* v. *Pleasant Grove*, 664 F.2d 99, 100 (5th Cir. 1981), cert. denied, 456 U.S. 973 (1982) (ordinance that confiscated landowners' right to construct previously authorized apartment complex is an unconstitutional taking). The challenged regulation did not interfere with the plaintiffs' investment-based expectations. They acquired the property when the regulation was already in effect. See *Fragopoulos* v. *Rent Control Bd. of*

---

[5]The opinion of the Court of Appeals of New York in *Seawall Assocs.* v. *City of N.Y.*, 74 N.Y.2d 92, cert. denied, 493 U.S. 976 (1989), on which the plaintiffs rely, provides no guidance on the proper disposition of this case. For example, there the cumulative effect of the local regulations amounted to a denial of economically viable use of the regulated property. *Id.* at 108-110.

[6]We shall assume that this principle applies to an alleged temporary regulatory taking in the same manner that it applies to an alleged permanent regulatory taking. The United States Supreme Court's Fifth Amendment takings principles concerning permanent takings are applicable to regulatory conduct that temporarily denies a landowner all use of his property. See *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U.S. 304, 318 (1987). That Court has not explicitly stated, however, what principles apply when a temporary regulatory taking does not deny all economically beneficial use of property. There is authority that the two situations differ for takings purposes. See *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 210 Cal. App. 3d 1353, 1367 (1989), cert. denied, 493 U.S. 1056 (1990); *Shopco Group* v. *Springdale*, 66 Ohio App. 3d 702, 707-708 (1990). But see *Poirier* v. *Grand Blanc Township*, 167 Mich. App. 770, 772, 777 (1988) (Michigan Constitution).

*Cambridge, supra* at 308. The price that they paid for the property should have reflected whatever adverse impact the regulation had on the fair market value of the property. See *Flynn* v. *Cambridge, supra* at 160. Moreover, if, as seems reasonably inferable, their investment expectations were based on the ultimate invalidation of the regulation in a judicial proceeding, the plaintiffs' investment expectations had to reflect the anticipated delay in the litigation process.[7]

In considerable measure, the delay to which the plaintiffs were subject is the same kind of delay that commonly occurs in seeking regulatory approvals or changes in local ordinances and by-laws, which are government-imposed processes that have not traditionally been viewed as constituting regulatory takings. See *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles, supra* at 321 ("We . . . of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us"); *Bello* v. *Walker,* 840 F.2d 1124, 1126 (3d Cir.), cert. denied, 488 U.S. 851, 868 (1988) ("absent extraordinary circumstances not presented by this case, [even lengthy] delays in issuing a building permit do not result in a 'taking' "). Cf. *Wilson* v. *Commonwealth, ante* 352, 355 (1992) (unreasonable agency delay in processing application could possibly be regulatory taking, where delay caused total destruction of the property). The fact that the plaintiffs could not make immediate opti-

---

[7]It should not be assumed that we would reach a different result if a challenge were advanced by one who had acquired an interest in rent-controlled condominium units before the adoption of the regulation. Compare *Flynn* v. *Cambridge,* 383 Mass. 152, 160-161 (1981) (local regulation barring owner of rented condominium unit from occupying it does not constitute taking, even as to one owning and renting unit when regulation enacted), with *Poledňak* v. *Rent Control Bd. of Cambridge,* 397 Mass. 854, 861-862 (1986) (taking involved if ordinance were to be applied retroactively to thwart condominium unit owner's primary expectation of continuing to occupy it after she bought it). See *Penn Cent. Transp. Co.* v. *New York City,* 438 U.S. 104, 136 (1978) ("the [local regulation] does not interfere with what must be regarded as [the landowner's] primary expectation concerning the use of the parcel").

mum use of their property (and thus were unable to sell the units at prices higher than those at which they could sell them after the regulation was invalidated) does not constitute a taking. See *Andrus* v. *Allard*, 444 U.S. 51, 66 (1979); *Flynn* v. *Cambridge, supra* at 160-161.

It is, of course, true that in this case the delay was caused, not by the necessity of obtaining mandated governmental approvals, but by the process of presenting a judicial challenge to a municipal regulation. That legal challenge resulted in invalidation of the regulation as beyond the authority of the city to adopt, but not because the municipal regulation was unconstitutional as violating rights to due process or equal protection of the laws. *Steinbergh I, supra* at 148. The plaintiffs make no reasoned argument that, simply because a municipal regulation is not authorized by law, there is a compensable temporary taking of property, even though the regulation restricts the sale and reduces the market value of the property until the regulation is successfully challenged in court. See *Estate of Himelstein* v. *Fort Wayne*, 898 F.2d 573, 576-577 n.4 (7th Cir. 1990) (delay attributable to legal challenge to zoning laws not a taking of property).

The plaintiffs make an entirely separate takings argument based on the principle that a taking occurs when a land-use regulation "does not substantially advance legitimate state interests." *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980). In *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 834-835 (1987), the Court observed that "a broad range of governmental purposes and regulations satisfies these requirements." The Court also noted that its "cases have not elaborated on the standards for determining what constitutes a 'legitimate state interest' or what type of connection between the regulation and the state interest satisfies the requirement that the former 'substantially advance' the latter." *Id.* at 834. The plaintiffs do not argue that the control of rents in Cambridge through local regulation is not a legitimate State interest. They focus rather on the requirement that a land-use regulation must substantially advance a State interest and argue that the restriction on the sale of their condomin-

ium units as individual units did not substantially advance the administration of the Cambridge rent control law.

The requirement that a regulation substantially advance the State interest may express a higher standard at least in certain circumstances than the rational basis test commonly applicable in deciding whether an exercise of the police power satisfies due process or equal protection requirements. *Id.* at 834 n.3.[8] It may be that the degree of substantiality required varies depending on the character of the State's interest in relation to the reduction that the local regulation causes in the value and quality of the affected property. See *id.* at 841[9]; L. Tribe, American Constitutional Law § 9-4, at 599 n.20 (2d ed. 1988). In the case before us, unlike the *Nollan* case, the city has not attempted to acquire an interest in land at no cost to the public, nor has Cambridge sought to regulate the plaintiffs' property for a reason that has no connection whatever with the reason for rent control.

Under traditional principles, the burden is on the plaintiffs to demonstrate that the regulation fails to meet the constitutional standard (that is, substantially advance the regulation of rents in the city). They rely heavily on language in this court's opinion in *Steinbergh I.* There we were concerned with whether the regulation was necessary to the operation of

---

[8]But see *Commercial Builders of N. Cal.* v. *Sacramento*, 941 F.2d 872, 874 (9th Cir. 1991), cert. denied, 112 S. Ct. 1997 (1992) (rejecting argument that *Nollan* materially changes level of scrutiny; no Circuit Court of Appeals has interpreted *Nollan* "as changing the level of scrutiny to be applied to regulations that do not constitute a physical encroachment on land").

[9]Regarding the phrase "*substantial* advanc[ing]," the Court stated, "We are inclined to be particularly careful about the adjective where the actual conveyance of property is made a condition to the lifting of a land-use restriction, since in that context there is heightened risk that the purpose is avoidance of the compensation requirement, rather than the stated police power objective." (Emphasis in original.) *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 841 (1987). The *Nollan* case involved a condition that landowners convey an easement across their property in order to obtain a permit to construct a dwelling. The Court concluded that the governmental purpose in requiring the grant of an easement was not the same as the governmental purpose in regulating construction of the dwelling, and thus there was a taking. *Id.* at 836-842.

the rent control law, in which case the city would have had implied authority to adopt it. *Steinbergh I, supra* at 151. The city had express authority to regulate rents but only such authority to regulate the removal of units from rent control as was necessary to regulate rents. We concluded that the ordinance provision barring an owner of a group of condominium units from selling individual condominium units separately was not necessary for that purpose. Thus the city had no implied authority to adopt it. In the case before us, the standard is not one of necessity. The test is rather whether the regulation advanced the objects of rent control and did so substantially.[10]

We conclude that the challenged ordinance substantially advanced the purpose of rent control. We may rely on information available to the city council at the time of its enactment of the regulation.[11] Here the legislative record, which includes a May 28, 1981, report to the city council, indicated that owners of rent-controlled condominium units were unlawfully occupying them by various devices. The task, of monitoring the occupancy of newly-sold units was "an intrusive and impossible task" and financially burdensome. The report states further that evidence supports a presumption that "developer sales are tantamount to removal from the rental market." By permitting the sale of rent-controlled condominium units only as a group, except a sale to a current tenant or when the board grants a removal certificate, the

---

[10]The plaintiffs, we think rightly, do not contend that a local land use regulation that is ultra vires cannot, as a matter of law, be viewed for takings purposes as substantially advancing a State interest.

[11]It is not clear that for this purpose we may properly attribute to the city council any apparent reasonable ground for its action, at least if that action is not contradicted by facts established on the summary judgment record. Cf. *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974) (all rational inferences are made in favor of legislation whose constitutionality is challenged on due process and equal protection grounds). Accord *Matter of Tocci, ante* 542, 549 (1992). We would be unwilling to attribute to a government agency a reason for its action that is inconsistent with its stated reasons for its action. See *Nollan* v. *California Coastal Comm'n, supra* at 840.

ordinance provision eliminated one circumstance by which people had been illegally occupying rent-controlled condominium units. The elimination, through the adoption of an economically feasible restriction, of conditions that created a substantial risk of difficult-to-discover violations of an aspect of the rent control law substantially advanced the operation of the Cambridge rent control law.[12] The incremental enforcement advantage of the regulation was sufficient to satisfy the constitutional standard. Although in *Steinbergh I* that advantage was too little to constitute a necessary provision for regulating unlawful occupation of rent-controlled units, it was nevertheless a "logical and sufficiently well-founded approach to dealing" with the problem for us to find, under the *Nollan* case, that the "essential nexus" between "the State's interest and its chosen means is present in this case." *Esposito* v. *South Carolina Coastal Council*, 939 F.2d 165, 169 (4th Cir. 1991), cert. denied, 112 S. Ct. 3027 (1992) (prohibition on building seaward of setback line not taking when adopted to ameliorate beachfront erosion).

---

[12]After *Steinbergh I* had been decided, by St. 1990, c. 52, § 2, in language substantially identical to the challenged regulation, the Legislature enacted a restriction on the sale of individual units by an owner of a Cambridge building with condominium units. In § 1 of that act, the General Court made legislative findings to the effect that (a) it was necessary to regulate the removal of controlled rental units from the market, (b) the city's existing powers to regulate such removals had proven inadequate, (c) since *Steinbergh I*, "hundreds of individual condominium units have been transferred or sold thereby creating a substantial risk of the removal of controlled rental housing units from the rental market," and "(*d*) [i]n order to regulate such removals effectively, it is necessary to regulate the sale of condominium units by the owners of rent controlled buildings, for the reasons stated in the Report of the Cambridge City Council Committee on Rent Control dated May 28, 1981."

Although these findings made after the adoption of the challenged ordinance provision are not supportive legislative history, they do justify a judicial conclusion that the ordinance substantially advanced the operation of the Cambridge rent control law. These findings also make no longer correct the dicta in *Steinbergh I* that the challenged regulation had "minimal" logical connection to preserving Cambridge's rental housing stock. See *Steinbergh* v. *Rent Control Bd. of Cambridge*, 406 Mass. 147, 155 (1989).

3. We need not discuss at length the plaintiffs' claims that they were denied due process of law and equal protection of the laws. In light of our conclusion that the challenged regulation substantially advanced the object of rent control in Cambridge, it is apparent that the regulation satisfied the due process requirement that a law have foundation in reason and not be an exercise of power not rationally related to a valid legislative purpose. See *Smithfield Concerned Citizens for Fair Zoning* v. *Smithfield*, 907 F.2d 239, 243-244 (1st Cir. 1990). See also *Commonwealth* v. *B & W Transp. Inc.*, 388 Mass. 799, 805, appeal dismissed sub nom. *Burke Distrib. Corp.* v. *Massachusetts*, 464 U.S. 957 (1983); *Gilbert* v. *Cambridge*, 932 F.2d 51, 65-66 (1st Cir.), cert. denied, 112 S. Ct. 192 (1991). The facts that the regulation was ruled to be beyond the city's authority to enact and that the plaintiffs suffered a financial loss because they could not sell individual condominium units while their judicial challenge was in process do not amount to a denial of substantive due process. There is no claim that the city acted in bad faith or with some other improper animus. The regulation was of general application and adopted before the plaintiffs purchased their property.

For reasons already given, there was a rational basis, for equal protection of the laws purposes, in limiting the sale of individual condominium units by a multiple owner and not doing so as to an owner of only one condominium unit. The purpose was not to restrict sales of a person's investment in one or more condominium units but to reduce the illegal occupation of rent-controlled units by persons purchasing such units. The two classes of owners were treated equally because members of each class were free to sell their entire ownership interests.

*Judgment affirmed.*