MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC.,
& another[1] vs. COMMONWEALTH & others.[2]

Suffolk. November 5, 1992. - March 1, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Beverage Containers. Due Process of Law*, Taking of property, Retroactive
application of statute. *Constitutional Law*, Taking of property. *Statute*,
Retroactive effect, Severability. *Abandoned Property*.

Beverage bottlers and distributors had no common law property right to
deposits paid by consumers on returnable bottles pursuant to G. L. c.
94, §§ 321-327 (the "bottle bill"), thus the amendment to that statute
set forth in St. 1989, c. 653, §§ 68-72, 235-237, conferring the right to
the deposits on the consumer and, once abandoned, on the Common-
wealth, did not violate the takings clause of the United States Constitu-
tion or the Massachusetts Declaration of Rights. [415-418]
Statute 1989, c. 653, § 237, requiring beverage bottlers and distributors to
maintain, as of January 1, 1990, a separate account for deposits paid on
returnable bottles and in addition to deposit in that account an amount
equal to the total refundable deposits received during the last three
months of 1989, constituted an unconstitutional taking with respect to
the 1989 deposit funds, where the bottlers and distributors had a vested
interest in any personal assets they deposited into the account (repre-
senting the amounts that had been paid out to retailers for returned
empty containers in those three months) and had a right, in any event,
pursuant to the holding in *Massachusetts Wholesalers of Malt Bever-
ages, Inc.* v. *Attorney Gen.*, 409 Mass. 336 (1991), to all unclaimed
deposits until the effective date of the amendment, January 4, 1990.
[418-419]
The provisions of St. 1989, c. 653, § 237, were severable from the remain-
der of the amendment to G. L. c. 94, § 321-327, effected by St. 1989, c.
653, §§ 68-72, 235-237. [419-420]
The abandoned property scheme effected by St. 1989, c. 653, §§ 68-72,
235-236, providing for the Commonwealth's seizure of unclaimed bev-
erage container deposits, is proper. [421]

---

[1]Massachusetts Soft Drink Association.

[2]Attorney General, Commissioner of Revenue, and Secretary of the
Executive Office of Environmental Affairs.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 26, 1990.

On transfer to the Superior Court Department, the case was heard by *Charles F. Barrett*, J., on motions for summary judgment and was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*H. Glenn Alberich* (*Alice E. Moore* with him) for Massachusetts Wholesalers of Malt Beverages, Inc.

*Toni G. Wolfman* for Massachusetts Soft Drink Association.

*Eric A. Smith*, Assistant Attorney General (*Douglas H. Wilkins*, Assistant Attorney General, with him) for the Commonwealth & others.

*David A. Nicholas & Joshua Kratka*, for Massachusetts Public Interest Research Group, amicus curiae, submitted a brief

LYNCH, J. In *Massachusetts Wholesalers of Malt Beverages, Inc. v. Attorney Gen.*, 409 Mass. 336 (1991) (*Mass. Wholesalers*), we considered whether G. L. c. 94, § 323 (*g*), of the so-called "bottle bill,"[3] as originally enacted, required bottlers and distributors to hold "deposits and/or handling charges" created by the law in trust for consumers and, with respect to unclaimed deposits, for the Commonwealth by application of principles of abandoned property law. *Mass. Wholesalers, supra* at 342.[4] We held that the unclaimed "deposits" belonged to the bottlers and distributors. *Id.* at 343.

In 1989, the Legislature amended G. L. c. 94, §§ 321-327, by St. 1989, c. 653, §§ 68-72, 235-237 (amendment), adding a number of sections to the bottle bill. A new provision, G. L. c. 94, § 323 (*h*) (1990 ed.), required bottlers and distributors to maintain, as of January 1, 1990, a "separate account to be

---

[3]G. L. c. 94, §§ 321-327.

[4]We were also asked to decide a second question unrelated to the issue in the instant case. See *Massachusetts Wholesalers of Malt Beverages, Inc. v. Attorney Gen.*, 409 Mass. 336, 337 (1991).

known as the Deposit Transaction Fund . . . [which] shall be kept separate from all other revenues and accounts. Each bottler or distributor shall place in said fund the refund value for all non-reusable beverage containers it sells . . . ." Amounts in the fund may only be expended to pay refund values for returned nonreusable beverage containers, and "shall not be used to pay the handling fees required by [§ 323 (c)-(e)]." *Id.* In addition, the fund shall be maintained "on behalf of consumers who have purchased refundable non-reusable beverage containers and on behalf of the commonwealth; . . . for no purposes are amounts in such fund to be regarded as income of said bottlers or distributors." *Id.* The bottler or distributor may, however, transfer to its own account any interest earned on the fund. G. L. c. 94, § 323C.

By the tenth of every month, bottlers or distributors must turn over to the Commissioner of Revenue all "abandoned deposit amounts" in the fund.[5] G. L. c. 94, §§ 323C, 323D. A specified portion of the "[a]mounts collected by the commissioner of revenue . . . shall be deposited in the Clean Environment Fund," G. L. c. 94, § 323D; the remainder is deposited in the General Fund.[6] St. 1989, c. 653, § 235. The amendment eliminated the provisions of G. L. c. 94, § 323 (g), which we construed in *Mass. Wholesalers, supra,* as of January 1, 1990. St. 1989, c. 653, § 236.

---

[5]The amendment defines "abandoned deposit amounts" as follows:

"At the end of each month, any amounts that are or should be in a bottler's or distributor's Deposit Transaction Fund and that are in excess of the sum of (a) income earned on amounts in said account during that month and (b) the total amount of refund values received by said bottler or distributor for non-reusable beverage containers during that month and the two preceding months shall be deemed to constitute abandoned deposit amounts." See G. L. c. 94, § 323C.

[6]Amounts deposited in the Clean Environment Fund shall be used, subject to appropriation, "solely for programs and projects in the management of solid waste and for environmental protection." G. L. c. 94, § 323F (1990 ed.).

The amendment also provides for the retroactive funding of the "deposit transaction fund" by requiring each bottler to place into its fund by January 1, 1990, a sum equal to the refund value for each container that it sold during the last three months of 1989. St. 1989, c. 653, § 237. Section 71 of the amendment also requires the Commissioner of Revenue to administer the deposit transaction fund and to promulgate "rules and regulations to effectuate the purposes" of G. L. c. 94, § 323 (*g*) & (*h*), and §§ 323B-323E.[7] G. L. c. 94, § 326.

The plaintiffs filed the instant action in the Supreme Judicial Court for Suffolk County seeking a declaratory judgment that the bottle bill, as amended, takes the property of the bottlers and distributors without compensation in violation of the takings clauses of the United States Constitution and the Massachusetts Declaration of Rights. The plaintiffs also requested a preliminary injunction enjoining the Commonwealth from enforcing the provisions of the amendment. A single justice refused to issue an injunction and remanded the case to the Superior Court for further proceedings. In the Superior Court, the parties filed cross motions for summary judgment. The judge ruled that the amendment, apart from the retroactive funding portion, "does not effect a taking of any property of bottlers or distributors," "does not violate any constitutional requirement concerning abandoned property," and was a "proper exercise of legislative power that establishes that refund values belong to consumers until they escheat to the Commonwealth." He further ruled that the retroactive funding portion of the amendment "effects an unconstitutional retroactive taking of the property of bottlers

---

[7]The amendment requires that the regulations include (1) "a provision to permit bottlers or distributors to place in the deposit transaction fund . . . an amount less than required . . . and to gradually achieve full funding . . . over a period not to exceed five years," St. 1989, c. 653, § 237; and (2) "a provision to permit bottlers or distributors to borrow, without any interest charge, against their deposit transaction funds," G. L. c. 94, § 326. The amendment also provides for reimbursement of bottlers and distributors, subject to certain limitations, where amounts from the deposit transaction fund expended to pay refund values exceed the amounts which are or should be in the fund. G. L. c. 94, § 323E.

and distributors as to refund values collected during the three months prior to the Amendment's effective date," but declared that the retroactive funding portion was severable from the rest of the amendment. He entered a detailed order, allowing in part and denying in part each of the cross motions, and reported the matter to the Appeals Court. See G. L. c. 231 § 111 (1990 ed.); Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted direct appellate review and now affirm.

1. The first question before us is whether the amendment to the bottle bill violates the takings clause by conferring the right to the deposits on the consumer and, once abandoned, on the Commonwealth. Since the plaintiffs do not argue that we should apply any principles under the Massachusetts Declaration of Rights different from those established by the United States Supreme Court, we focus on the claimed violations of the United States Constitution. *Steinbergh v. Cambridge*, 413 Mass. 736, 738 (1992). The material facts are not in dispute.

Government action does not constitute a "taking" if the plaintiffs do not have a property interest in the affected property. *German v. Commonwealth*, 410 Mass. 445, 450 (1991). The "government is not required to compensate an individual for denying him the right to use that which he has never owned." *Flynn v. Cambridge*, 383 Mass. 152, 160 (1981). The plaintiffs claim to have a property right to the deposits based on common law. However, they admit that the bottlers and distributors did not begin to include a separate deposit amount (equivalent to the statutory "refund value" for nonreusable containers) in the price of beverages charged to retailers until the enactment of the bottle bill.[8] They also admit that, prior to the bottle bill, they did not charge this ex-

---

[8] The plaintiffs, in their amended complaint, state: "Under the Bottle Law, malt beverage distributors and soft drink bottlers have historically charged a refund value as part of the price of filled, non-reusable beverage containers."

tra deposit amount.[9] It follows, therefore, that any right to these deposits was created under the original bottle bill, as we interpreted that statute in *Mass. Wholesalers, supra.*

Contrary to the plaintiffs' argument, we did not recognize such a common law property right in *Mass. Wholesalers, supra.*[10] "It is in that context that we consider whether § 323 (*g*) *reveals a legislative intent* that beneficial ownership of the 'deposits and/or handling charges'. . . resides not in the bottlers and distributors but, instead, in the consumers" (emphasis added). *Id.* at 342. Moreover, the statement " 'deposits and/or handling charges' can only be viewed as a portion of the purchase price of filled containers paid by dealers to distributors and by distributors to bottlers" did not imply a common law property right on the bottlers and distributors to the deposits. *Mass. Wholesalers, supra* at 341. Instead, our holding was simply that, absent express legislative intent in the language of the original bottle bill, the deposits belonged to the plaintiffs. We stated:

> "The motion judge considered significant, as do we, that 'there is no express provision [in the bottle bill] concerning the disposition of unclaimed deposits. . . . *The absence of legislative direction*, express or implied, leads to the fair inference that the unclaimed deposits belong to the bottlers and distributors' " (emphasis added). *Id.* at 342.

---

[9]Mass. Wholesalers claims that "the Bottle Law did not create or invent the container deposit or the refund system. It simply codified the system already in place." The system in place, however, was designed for use with reusable containers, the use of which the plaintiffs have almost completely abandoned.

[10]We specifically did not discuss the amendment in *Mass. Wholesalers, supra* at 344 ("The amendment does not address the status of deposits or container refund values collected or paid out prior to its effective date, with one minor exception, and thus, the parties agree, the amendment does not govern the container refund values at issue in this case"). Rather, as the Superior Court judge noted, we "construed rights of the parties under a wholly different statute which was silent·on the ownership rights to unclaimed deposits."

The plaintiffs' right to the deposits created under the original bottle bill, as interpreted in *Mass. Wholesalers, supra,* does not translate into a similar right to these deposits under the bottle bill, as now amended. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). *German v. Commonwealth, supra* at 450.[11] What the Legislature granted in the original bottle bill, the Legislature can take away by amendment. See, e.g., *Atkins v. Parker,* 472 U.S. 115, 129 (1985) (Congress had plenary power to define scope and duration of entitlement to food-stamp benefits, and to increase, to decrease, or to terminate those benefits); *German v. Commonwealth, supra* at 450 (State furlough program did not violate takings clause since no property interest in future wages for future State employment existed). See *Answer of the Justices,* 406 Mass. 1220, 1225 (1989) (Legislature has power to amend prior legislation, so long as amendment would not violate provisions of Constitution). See also *Answer of the Justices,* 375 Mass. 790, 793 (1978) ("[W]hatever interpretation we might give would not affect the Legislature's power to amend or clarify the statute, giving it whatever interpretation the General Court might desire").[12] As the Superior Court judge noted, the amendment now "makes it redundantly clear that these [deposit] rights belong to the consumer and to the Common-

---

[11]In *Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972), the United States Supreme Court used this definition of "property interests" in the context of procedural due process. We, however, have looked to this definition by way of analogy in a takings analysis. *German v. Commonwealth,* 410 Mass. 445, 451 (1991).

[12]By analogy, it is settled that "an office created by the Legislature, and not by the Constitution, may be 'regulated, limited, enlarged or terminated by law, as public exigency or policy may require.'" *German v. Commonwealth, supra* at 451, quoting *McCarthy v. Sheriff of Suffolk County,* 366 Mass. 779, 782 (1975).

wealth and '. . . for no purpose [are] . . . to be regarded as income of said bottlers or distributors.' "[13]

2. The amendment includes a retroactive funding provision that requires each bottler and distributor to establish a deposit transaction fund as of January 1, 1990, and to deposit in that fund "an amount equal to the total amount of refund values received" (deposits) during the last three months of 1989. St. 1989, c. 653, § 237. The Superior Court judge held that § 237 effected a "retroactive taking" of the refund values collected during the three months prior to the amendment's effective date. We agree.

Bottlers and distributors are required to make the initial deposit to the fund regardless of the amounts they paid out to retailers for returned empty containers. To meet that amount, bottlers and distributors must deposit all unclaimed deposits from those three months, and finance the balance with their private assets. The Attorney General argues that the funding requirement is neither retroactive nor a taking since the bottlers and distributors do not have a vested interest in the bottle deposits. See *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 781 (1975). Even if that were so with regard to unclaimed deposits, the bottlers and distributors have a vested interest in any personal assets they deposited into the fund. Furthermore, pursuant to our holding in *Mass. Wholesalers*, *supra*, the bottlers and distributors have a similar right to all unclaimed deposits until the effective date of the amendment on January 4, 1990. Therefore, the bottlers and distributors have a vested interest in the amount of their initial deposit in the fund.

The Attorney General also argues that St. 1989, c. 653, § 237, does not effect a per se taking of these assets. However, once a bottler or distributor deposits any amount into a

---

[13]"The case is clear where the question is not of private rights alone, but the value was both created and diminished as an incident of the operations of the government. For if the enjoyment of a benefit thus derived from the public acts of government were a source of legal rights to have it perpetuated, the powers of government would be exhausted by their exercise." *Reichelderfer* v. *Quinn*, 287 U.S. 315, 319 (1932).

fund, the money must be held "on behalf of consumers," and is "for no purpose . . . to be regarded as income of said bottlers or distributors." G. L. c. 94, § 323 (*h*). Furthermore, the bottlers and distributors cannot use any amounts from the fund to pay refund values for those last three months of 1989. *Id.* The retroactive funding provision, thus, takes assets, which are the property of the bottlers and distributors, without compensation and is unconstitutional. "A State, by ipse dixit, may not transform private property into public property without compensation." *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 164 (1980).

Both the Attorney General and amicus curiae argue that § 237 is a valid exercise of the State's police power that meets the "test of reasonableness" enunciated for such cases. See *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991), and cases cited. The Superior Court judge concluded that § 237 was not "saved as a reasonable exercise of the Commonwealth's police power." We, however, need not conduct such an analysis. The provision effects a simple taking of private property. See *Armstrong* v. *United States*, 364 U.S. 40, 48 (1960) ("The total destruction by the Government of all value of . . . compensable property, has every possible element of a Fifth Amendment 'taking' and is not a mere 'coincidental incidence' of a valid regulatory measure"). We know of no case where the reasonableness of a statute has cured an outright taking of the sort effected by this provision. See, e.g., *Leibovich* v. *Antonellis, supra*; *Boston* v. *Keene Corp.*, 406 Mass. 301 (1989); *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416 (1986); *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181 (1978). "[P]rivate property shall not be thus taken even for a wholly public use without just compensation." *United States* v. *Security Indus. Bank*, 459 U.S. 70, 77 (1982), quoting *Louisville Joint Stock Land Bank* v. *Radford*, 295 U.S. 555, 602 (1935).

3. The Superior Court judge also ruled that St. 1989, c. 653, § 237, was severable from the remainder of the amendment. We agree.

"When a court is compelled to pass upon the constitutionality of a statute and is obliged to declare part of it unconstitutional, the court, as far as possible, will hold the remainder to be constitutional and valid, if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 540 (1982), quoting *Opinion of the Justices*, 330 Mass. 713, 716 (1953). The Legislature included the retroactive funding provision so that abandoned deposit amounts would escheat to the State almost immediately after enactment. Without the provision, the State will not receive these amounts immediately. However, bottlers and distributors are still required to begin depositing unclaimed refund value amounts in the funds as of January 1, 1990. See G. L. c. 94, § 323 (*h*). Abandoned deposit amounts would then escheat to the State beginning in the third month after the law takes effect. See G. L. c. 94, § 323C. Thus, the amendment will still accomplish its purposes, but only three months later than expected, without the retroactive funding provision. Clearly, the Legislature would have intended the amendment to have this less than immediate effect, rather than no effect at all.[14] The provision is severable from the rest of the amendment.[15]

---

[14]The Commissioner of Revenue, empowered to promulgate "rules and regulations to effectuate the purposes" of the amendment, can use the remaining constitutional sections of the amendment to administer the deposit transaction funds. See St. 1989, c. 653, § 237 (the commissioner "shall include in the rules and regulations . . . a provision to permit bottlers or distributors to place in the deposit transaction fund as of [January 1, 1990], an amount less than the full amount required by [§ 323 (*h*)] and to gradually achieve full funding of the deposit transaction fund over a period not to exceed five years"). See also 830 Code Mass. Regs. §§ 94.323.1(5)(a), and 94.323.1(7)(h) (1990) (commissioner can require bottlers and distributors to turn over abandoned deposit amounts even absent full funding of funds).

[15]General Laws c. 4, § 6 (1990 ed.), entitled "Rules for construction of statutes," also imputes a severability clause into every Massachusetts statute, stating at paragraph Eleventh, "[t]he provisions of any statute shall be deemed severable, and if any part of any statute shall be adjudged uncon-

4. Finally, Mass. Wholesalers contends that the amendment effects a taking through the operation of an abandoned property scheme that is irrational and unworkable, and is contrary to general principles of abandoned property law. They claim that it is a common law principle that property can only be deemed abandoned where the party who has legal interest in the property does not assert a claim of ownership. See *Treasurer & Receiver Gen.* v. *John Hancock Mut. Life Ins. Co.*, 388 Mass. 410, 412-413 (1983). They argue that consumers who purchase beverages in nonreusable containers and fail to return them do not have a legal interest in the deposit amounts that they can later abandon. However, the amendment itself now explicitly gives the consumer the right to the deposit. See G. L. c. 94, § 323 (*h*) (bottlers and distributors hold deposits "on behalf of consumers, . . . and for no purpose are . . . to be regarded as income of said bottlers or distributors"). The lack of any connection between the deposit paid by the consumer and that received ultimately by the bottler or distributor which we recognized in *Mass. Wholesalers, supra* at 341, has been rectified by the specific language of the amendment. "As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a State, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Standard Oil Co.* v. *New Jersey*, 341 U.S. 428, 435-436 (1951). The abandoned property scheme set up in the amendment is proper.[16]

5. We hold that (1) St. 1989, c. 653, apart from the retroactive funding provision contained in § 237, does not offend the takings clause of the United States or our Constitution; (2) the retroactive funding provision, § 237, does effect a taking, but is severable from the rest of the amendment; and

stitutional or invalid, such judgment shall not affect other valid parts thereof."

[16]The rest of the attacks on the abandoned property scheme in the amendment do not raise constitutional issues and are not supported by persuasive authority. We, thus, decline to address those arguments.

(3) the amendment's abandoned property scheme is not improper. Accordingly, we affirm the decision of the Superior Court.

*So ordered.*