Clean Harbors of Braintree, Inc. *v.* Board of Health of Braintree.

## CLEAN HARBORS OF BRAINTREE, INC. *vs.* BOARD OF HEALTH OF BRAINTREE.

Norfolk. February 4, 1991. - April 29, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Health, Board of. Municipal Corporations*, Board of health. *Hazardous Waste. Statute*, Federal preemption. *Consumer Protection Act*, Availability of remedy.

The requirement contained in G. L. c. 111, § 150B, that any site on which a hazardous waste treatment facility is operated must be approved as such by the local board of health, was applicable to the operator of a facility that had been established prior to the effective date of the statute, and that had never received a site assignment under the preexisting provisions of c. 111, § 150A. [836-838]

General Laws c. 111, § 143, a statute regulating "harmful," "injurious," "dangerous," and odorous trades or employments, was not applicable to a hazardous waste treatment facility regulated under c. 111, § 150B. [838-839]

General Laws c. 111, § 150B, providing for municipal assignment of the locations for hazardous waste treatment facilities, was not preempted by provisions of Federal law contained in either the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. (1988), or the Toxic Substance Control Act, 15 U.S.C. §§ 2601 et seq. (1988). [839-841]

A municipal board of health, in its governmental capacity, was not an appropriate party to maintain a claim of unfair or deceptive trade practices under § 11 of the Consumer Protection Act, G. L. c. 93A. [841]

CIVIL ACTION commenced in the Superior Court Department on March 19, 1987.

The case was heard by *William C. O'Neil, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce A. Singal* for the defendant.

*Francis S. Wright* for the plaintiff.

NOLAN, J. The plaintiff, Clean Harbors of Braintree, Inc. (Clean Harbors), operates a hazardous waste treatment and storage facility on a site in the town of Braintree. Clean Harbors, originally named Recycling Industries, Inc., has operated its facility on this site since 1976. In 1980, the Legislature enacted G. L. c. 111, § 150B, inserted by St. 1980, c. 508, § 4, which requires that any site on which a hazardous waste facility is operated must be assigned for that purpose by the local board of health. Clean Harbors has never sought a site assignment under § 150B.

In 1985, Braintree requested that Clean Harbors apply for a site assignment. Clean Harbors initially cooperated, but balked when it appeared that the board would not grant such an assignment. Clean Harbors filed this declaratory judgment action, asserting that it was not required to seek a site assignment under § 150B. The board of health of Braintree (board) counterclaimed, asserting that a site assignment was required both by § 150B, and G. L. c. 111, § 143 (1988 ed.). Chapter 111, § 143, requires a site assignment for any trade or employment which may cause a nuisance or be harmful to persons or property. The board also alleged unfair and deceptive trade practices under G. L. c. 93A, § 11 (1988 ed.).

Both parties moved for summary judgment. Judgment was entered for Clean Harbors on the board's amended counterclaim. The judge held that, because the Clean Harbors facility was operating prior to the effective date of § 150B, the requirements of that section did not apply to Clean Harbors. The judge also ruled § 143 inapplicable to Clean Harbors. Having found that Clean Harbors was not in violation of either statute, the judge also allowed Clean Harbors' motion for summary judgment as to the dependent c. 93A claim. The board appealed, and we granted its application for direct appellate review.

After examining the statutory history of local site assignment provisions, we hold that § 150B applies to the site of the Clean Harbors facility. General Laws c. 111, § 150A, required a hazardous waste treatment and disposal facility to receive site assignments from the local board of health long

before the enactment of § 150B. The record shows that Clean Harbors has never received any site assignment from the board. Because § 143 is inconsistent with § 150B, § 143 does not apply to Clean Harbors. We also hold that the board does not have standing to bring an action under c. 93A. We, therefore, reverse the judgment of the Superior Court and direct that a new judgment enter in conformity with this opinion.

1. General Laws c. 111, § 150B, states that "[n]o place in any city or town shall be established or maintained or operated by any person . . . as a site for a facility, unless such place has . . . been assigned by the board of health of such city or town as a site for a facility . . . . " The section also states that the "definition of 'facility' in section two of chapter twenty-one D shall apply to this section. Any such facility shall be subject to this section and not subject to section one hundred and fifty A." A "facility" for purposes of § 150B is "a site or works for the storage, treatment, dewatering, refining, incinerating, reclamation, stabilization, solidification, disposal or other processes where hazardous wastes can be stored, treated, or disposed of."

Clean Harbors concedes that its facility fits this definition. However, Clean Harbors argues that, because its facility was established prior to the effective date of § 150B, § 150B is inapplicable. Clean Harbors recognizes that § 150B is not, by its own terms, limited to facilities established after the effective date of the statute. Clean Harbors states, however, that § 150B imports the "grandfather" clause found in G. L. c. 21D. We disagree.

Both § 150B and G. L. c. 21D were enacted by St. 1980, c. 508 (Act). Section 150B states that "[t]he definition of 'facility' in section two of chapter twenty-one D shall apply to this section." Chapter 21D, § 2, contains the definition of facility quoted above. That section has no grandfather clause. However, Clean Harbors points to c. 21D, § 18, as appearing in St. 1980, c. 508, § 8, which states that "[t]his chapter [c. 21D] shall not apply to any hazardous waste facility exempt from the licensing requirements of [c. 21C]

which was lawfully organized and in existence on May first, nineteen hundred and eighty, or to any hazardous waste facility which was licensed as such by any division of the department of environmental quality engineering as of May first, nineteen hundred and eighty." Clean Harbors is such a facility.

Clean Harbors argues that, since § 2 is contained in c. 21D, the definitions therein are subject to the grandfather clause. The definition of "facility" in c. 111, § 150B, according to Clean Harbors, is therefore limited by c. 21D, § 18, to facilities not licensed on the effective date of the Act. Therefore, Clean Harbors argues, its facility is not included in the definition of "facility" for purposes of § 150B. Because it is not a "facility," contends Clean Harbors, the site on which it sits need not be assigned by the local board of health. We believe that such an interpretation strains the language of the statute and thwarts the intent of the Legislature.

The plain language of § 150B strongly resists such an interpretation. First, § 150B speaks only of borrowing from § 2 of c. 21D — it does not mention § 18. Second, § 150B provides that no site shall be "established or *maintained* or *operated* . . . as a site for a facility," unless the place has been assigned for that purpose (emphasis added). Had the Legislature intended § 150B to apply only to facilities established after the effective date of the section, it would not have included the latter two terms.

Clean Harbors argues that the absence of a *grandfather* clause was an inadvertent omission on the part of the Legislature which interferes with the purposes of the Act. It contends that this court should adopt Clean Harbors' strained interpretation of the statutory language in order to fulfil the underlying statutory purpose. The purpose of the Act, argues Clean Harbors, was to facilitate siting of hazardous waste facilities in the Commonwealth. Without a grandfather clause, Clean Harbors asserts, the number of hazardous waste treatment facilities could actually be decreased because local boards of health will have the power to interfere with existing facilities and shut them down by denying

§ 150B site assignments; at the least, hazardous waste treatment capacity would be temporarily decreased while existing plants suspended operations in order to secure site assignments.

While we agree with Clean Harbors that the purpose of St. 1980, c. 508, was to increase hazardous waste treatment capacity in the Commonwealth, a judicially manufactured grandfather clause is not necessary to achieve that end. The absence of a grandfather provision would not result in the dire general consequences predicted by Clean Harbors. Section 150B provides that every site on which a hazardous waste facility is established, operated, or maintained must be assigned for that purpose by the local board of health. As noted above, any hazardous waste facility which was lawfully operating on the effective date of § 150B would have been subject to the applicable siting requirements of § 150A. Because § 150B provides that a place must have "been assigned by the board of health . . . as a site for a facility" without specifying when that assignment is made, a site assignment under § 150A prior to the passage of § 150B is sufficient to satisfy § 150B. Section 150B controls the future dispositions of site assignments for hazardous waste facilities, but does not require that preexisting sites, already approved locally, obtain *new* site assignments under § 150B.

We hold, therefore, that Clean Harbors must comply with § 150B. The record shows that Clean Harbors never obtained a site assignment under § 150B or its predecessor, § 150A.[1] Therefore, Clean Harbors, in order to continue operations, must apply for and receive a site assignment from the board of health of Braintree.

2. The board also contends that Clean Harbors must seek a site assignment under G. L. c. 111, § 143, which provides that "[n]o trade or employment which may result in a nui-

---

[1]The board's amended counterclaim alleges: "The Board has never granted a site assignment for the operation of Clean Harbors' hazardous waste facility." Clean Harbors' answer states: "Clean Harbors admits that the Board has not granted a site assignment for the subject hazardous waste facility."

sance or be harmful to its inhabitants, injurious to their estates, dangerous to the public health, or may be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health . . . ." Clean Harbors claims that all hazardous waste facilities are exempt from the provisions of § 143 and, therefore, they need not secure § 143 site assignment.

The operation of a hazardous waste facility is clearly included within the broad terms of § 143. Clean Harbors does not argue that its activities are not within those terms. Rather, Clean Harbors argues that § 143 conflicts with the comprehensive State program designed to regulate hazardous waste facilities. That comprehensive State program includes a provision requiring a site assignment by the local board of health. G. L. c. 111, § 150B. It would be redundant to require a facility to acquire separate site assignments under § 143 and § 150B. Moreover, § 143 is inconsistent with § 150B. Section 150B provides that site assignments may be rescinded, suspended, or modified only in limited circumstances. Section 143 gives local boards the power to revoke site assignments "when the board shall think proper." Since the two statutes are inconsistent, we hold that § 143 does not apply to facilities governed by § 150B, because § 150B was enacted after § 143, and, thus, we presume that the Legislature intended that § 143 not apply where inconsistent with § 150B. Clean Harbors is therefore not subject to § 143.

3. Clean Harbors argues finally that, regardless of how we interpret the Massachusetts statutes, those statutes are without force because they conflict with Federal law. The laws of the United States control over inconsistent State law. U.S. Const. art. IV. Congress, therefore, may entirely preempt State regulation of a particular subject. See *Ingersoll-Rand Co.* v. *McClendon*, 111 S. Ct. 478, 482 (1990). "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. 'The purpose of Congress is the ultimate touchstone' " (citations omitted). *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 208 (1985). Clean Harbors argues that two Federal statutes, the Resource Con-

servation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 et seq. (1988), and the Toxic Substance Control Act (TSCA), 15 U.S.C. §§ 2601 et seq. (1988), preempt the site assignment provisions at issue here. With regard to these Federal statutes, therefore, we must determine whether Congress intended to supplant and forbid State regulation of the subject matter.

The RCRA, directly addresses the scope of preemption. Title 42 U.S.C. § 6929 states, "Nothing in this chapter shall be construed to prohibit any State or political subdivision thereof from imposing any requirements, *including those for site selection*, which are more stringent than those imposed by such regulations" (emphasis added). When the plain language of the statute expresses congressional intent with such clarity, there is no need to inquire further. The RCRA does not preempt the local site assignment statutes at issue here.

The TSCA also directly addresses preemption. Title 15 U.S.C. § 2617(a) states, "[e]xcept as provided in paragraph (2), nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical substance, mixture, or article containing a chemical substance or mixture." Paragraph (2)(B) of that section provides that, "if the Administrator prescribes a rule or order . . . which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may . . . establish or continue in effect, any requirement which is applicable to such substance or mixture . . . designed to protect against such risk." The United States Environmental Protection Agency has adopted regulations concerning Polychlorinated Biphenyls (PCBs) pursuant to TSCA. See 43 Fed. Reg. 7150 (1978). Clean Harbors handles PCBs. Therefore, claims Clean Harbors, State regulation is preempted.

Clean Harbors, however, is involved in handling a wide range of hazardous waste, including spent solvents, contaminated process wastewaters, chemical sludges, waste labora-

tory chemicals, PCB liquids, contaminated soils from spills and sites undergoing environmental restoration, and pathological wastes. If Clean Harbors only handled PCBs, we would be compelled to take a closer look at the preemption issue to determine whether § 150B could apply. However, even if the PCB activity could continue unfettered by State regulation, an issue on which we express no opinion, the other activities of Clean Harbors would be subject to regulation. Therefore, § 150B is not preempted by TSCA.

4. The board also alleges that Clean Harbors' operation of the facility without a site assignment constitutes an unfair or deceptive act or practice in violation of G. L. c. 93A, § 11. In order to have standing to assert such a claim, however, a plaintiff must be a person engaged in "trade or commerce." G. L. c. 93A, § 11. The board is not such a person. A board of a town acting in its governmental capacity may not bring an action for unfair or deceptive trade practices under § 11. The entry of judgment by the Superior Court in favor of Clean Harbors on the 93A claim was therefore proper.

5. We reverse the judgment of the Superior Court and order that a new judgment be entered in conformity with this opinion.

*So ordered.*