JOHN GORDON & others[1] *vs.* SHERIFF OF SUFFOLK
COUNTY.

Suffolk. October 10, 1991. - November 18, 1991.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Suffolk County. Boston. Constitutional Law,* Home Rule Amendment.
*Statute,* Appropriation of money. *Municipal Corporations,* Home rule,
Officers and employees. *County,* Correctional facilities, Employees.

Legislation contained in the general appropriations act for fiscal year 1992,
providing for transfer of control over the Suffolk county house of cor-
rection from the penal institutions department of the city of Boston to
the sheriff of Suffolk County, addressed matters of State, regional, and
general concern and, consequently, did not implicate requirements of
art. 89 of the Amendments to the Massachusetts Constitution (the
Home Rule Amendment) concerning statutes applicable to only one
city or town. [243-247]

General Laws c. 29, § 7L, providing that a law making an appropriation
for expenses of the Commonwealth shall not contain provisions on any
other subject matter, was inapplicable, by its terms, to legislation pro-
viding funds for the expansion and use of county correctional facilities.
[247-248]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on August 2, 1991.

The case was reported by *Wilkins,* J.

*James F. Lamond* for the plaintiffs.

*Chester A. Janiak* (*Ann E. Merryfield & Walter M. Fos-
ter* with him) for the defendant.

---

[1]John Gordon has brought the action individually and in his capacity as
the president of Correction Officers Local 419, A.F.S.C.M.E., AFL-CIO.
The other plaintiffs are members of Local 419. The plaintiffs are
registered voters of Boston.

*Scott Harshbarger*, Attorney General, & *Luis A. Lavin*, Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

GREANEY, J. This case involves a dispute between employees at the Suffolk County house of correction at Deer Island (Deer Island) and the sheriff of Suffolk County (sheriff) over control and supervision of the house of correction and its personnel. The plaintiffs, the president and members of the labor union that represents correction officers at the house of correction, commenced this action in the Supreme Judicial Court for Suffolk County against the sheriff pursuant to G. L. c. 231A, § 1 (1990 ed.). The action sought injunctive and declaratory relief against the implementation of portions of line item 8910-0030, and the operation of §§ 356-363 of the Massachusetts Fiscal Year 1992 Budget Appropriation Act, St. 1991, c. 138. Under this legislation, control over the Suffolk County house of correction was transferred from the penal institutions department of Boston to the sheriff. The transfer legislation removed correction officers and other employees at Deer Island from the provisions of G. L. c. 31 (1990 ed.), the civil service law, and brought them into conformity with the employees of the Suffolk County jail, and the employees of all other county houses of correction and jails, none of whom is under the provisions of the civil service law. The plaintiffs challenged the validity of the transfer legislation, particularly with respect to removal of personnel from G. L. c. 31, on the grounds that the legislation violates specific provisions of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, and G. L. c. 29, § 7L (1990 ed.), which states that legislation making an appropriation for the expenses of the Commonwealth may not contain provisions on any other subject matter. A statement of agreed facts and documents was prepared, and a single justice reserved and reported the case to the full court for decision. We conclude that the transfer legislation does not violate the Home Rule Amendment or G. L. c. 29, § 7L.

The statement of agreed facts and documents furnishes the following background. By St. 1896, c. 536, § 9, the Legislature established Deer Island and placed it under the control and direction of the institutions commissioner of Boston. (The institutions department and its executive officer came to be known respectively as the penal institutions department and the penal institutions commissioner. St. 1897, c. 395, § 5.) By St. 1915, c. 116, Deer Island employees were placed under the provisions of the civil service law. The position of deputy commissioner of penal institutions was placed under the provisions of G. L. c. 31. St. 1957, c. 153.

Line item 8910-0030 of the budget of the Commonwealth for fiscal year 1992, St. 1991, c. 138, appropriated $33,350,000 "to fund county correctional expansion programs" and conditioned that appropriation as follows:

> "provided that . . . not less than five million dollars shall be expended for the new Suffolk [County] House of Correction . . . and provided further, that, notwithstanding any provision of chapters one hundred and twenty-six or one hundred and twenty-seven of the General Laws or any other general or special law to the contrary, the current Suffolk County House of Correction and the new Suffolk County House of Correction shall be under the sole and exclusive control of the sheriff of Suffolk county who shall administer the same in the same manner and with the same authority as found in the statutes which govern the administration of the Suffolk County Jail and under the provisions of sections 356 to 363 of this act."

Sections 356-363 of St. 1991, c. 138, among other things, place Deer Island employees under the control and supervision of the sheriff. The legislation removes the employees from the provisions of G. L. c. 31, and places them under the provisions of St. 1960, c. 135, which governs employees of the Suffolk County jail. The legislation also makes applicable to these employees the provisions of G. L. c. 31, §§ 43 and

45, and preserves for them seniority, compensation, salary, holidays, sick leave, vacation, and group insurance benefits.

The transfer legislation takes into account that Suffolk County is composed of four municipalities,[2] administered by county commissioners, and served by a county treasurer and a county auditor.[3]

Although certain matters pertaining to employees at the Suffolk County house of correction are handled by and through the city of Boston and its employees,[4] the transfer legislation was enacted with the following additional facts in mind:

(a) By December 31, 1991, Deer Island is scheduled to be closed and the new Suffolk County house of correction at South Bay opened. The funds for the construction of the new Suffolk County house of correction were provided by the Commonwealth pursuant to St. 1986, c. 658, which authorized the expenditure of funds for construction of jails and houses of correction "in the several counties of the commonwealth" through the "County Correction Loan Act of 1986."

(b) Deer Island receives sentenced inmates who may be residents of any of the four municipalities which constitute Suffolk County.[5]

(c) Pursuant to the provisions of G. L. c. 126, the Commonwealth provides for county jails and houses of correction,

---

[2]The cities of Boston, Chelsea, and Revere and the town of Winthrop.

[3]The mayor and city council of Boston serve as county commissioners of Suffolk County, see G. L. c. 34, § 4 (1990 ed.); Keane v. City Auditor of Boston, 380 Mass. 201, 202 n.3 (1980). The treasurer and auditor of Boston are the county's treasurer and auditor. See G. L. c. 35, §§ 1, 42 (1990 ed.).

[4]Prior to enactment of the transfer legislation, negotiation of collective bargaining agreements with the plaintiffs' union involved representation of the county by attorneys from various departments of the city of Boston. Correction officers at Deer Island participate in the retirement system established by G. L. c. 32 (1990 ed.). When they are injured at work, compensation benefits under G. L. c. 152 (1990 ed.), are paid from the city's penal department budget. Both the correction officers and officers at the Suffolk County jail receive paychecks issued by the city of Boston.

[5]These inmates are sentenced by State judges for violation of State penal laws.

including those in Suffolk County,[6] and pursuant to G. L. c. 127, the Commonwealth, through its Commissioner of Correction, regulates county correctional facilities, including Deer Island.

(d) The budget to operate Deer Island, which includes the funds for the salaries and benefits paid to the plaintiffs and other union members, is passed as the budget for "the Suffolk County House of Correction,"[7] the authority for which is attributed, among other sources, to the "County Commissioners for Suffolk County, MGLA, c. 34, §'4"; G. L. c. 126, which provides for county jails and houses of correction; G. L. c. 127, which confers on the Commissioner of Correction oversight over county correctional facilities, and regulations of the Commissioner of Correction pertaining to county correctional facilities. See 103 Code Mass. Regs. §§ 900.00 (1986). The budget lists the appropriation for the penal institutions department among the "county departments," and not as one of the "city of Boston departments."

(e) The transfer legislation provided not less than $5,000,000 for a new Suffolk County house of correction as part of a larger appropriation for "county correctional expansion programs" and, by removing these employees from the provisions of G. L. c. 31, and transferring control over that facility and its employees to the sheriff, brought Suffolk County into conformity with all other counties (except Dukes County which is too small to have a house of correction and Nantucket County which has neither a jail nor a house of correction), where the sheriff controls both the county jail and house of correction and their personnel.

---

[6] General Laws c. 126, § 8, provides that the "county commissioners in each county, except Dukes, shall at the expense of the county provide a house or houses of correction."

[7] The jail officer positions at the Suffolk County jail and the correction officer positions at Deer Island are both included in the personnel plan "for officers and employees of Suffolk County." The plaintiffs' union contract is with "the County of Suffolk," as is the contract for jail officer employees of the Suffolk County jail and the contract for noncustodial employees at both the Suffolk County jail and Deer Island.

1. Under § 8 of the Home Rule Amendment, the Legislature is restricted from passing a special law (a statute that is applicable to only one city or town) unless the affected municipality requests the Legislature to do so by means of a petition approved either by its voters or its mayor and city council or unless the Legislature acts on a recommendation by the Governor with a two-thirds vote of each branch of the Legislature.[8] "Section 9 of the Home Rule Amendment mandates that existing special laws relating to cities and towns shall have the status of city or town charters and requires either a home rule petition or a law of general applicability in conformity with the requirements of § 8 . . . to amend or repeal such special laws."[9] *Emerson College* v. *Boston*, 393 Mass. 303, 308 (1984).

The plaintiffs argue that St. 1915, c. 116, and St. 1957, c. 153, placing the Deer Island employees and the deputy commissioner of penal institutions under the civil service law,

[8]Section 8 of the Home Rule Amendment provides in pertinent part: "The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities . . . or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town; (2) by a two-thirds vote of each branch of the general court following a recommendation by the governor; (3) to erect and constitute metropolitan or regional entities, embracing any two or more cities or towns . . . or established with other than existing city or town boundaries, for any general or special public purpose or purposes, and to grant to these entities such powers, privileges and immunities as the general court shall deem necessary or expedient for the regulation and government thereof; or (4) solely for the incorporation or dissolution of cities or towns as corporate entities, alteration of city or town boundaries, and merger or consolidation of cities and towns, or any of these matters."

[9]Section 9 of the Home Rule Amendment provides: "All special laws relating to individual cities or towns shall remain in effect and have the force of an existing city or town charter, but shall be subject to amendment or repeal through the adoption, revision or amendment of a charter by a city or town in accordance with the provisions of sections three and four and shall be subject to amendment or repeal by laws enacted by the general court in conformity with the powers reserved to the general court by section eight."

constitute special laws under the provisions of the Home Rule Amendment because the statutes apply by their plain text only to employees (and an administrator) of the penal institutions department of the city of Boston. In the plaintiffs' view, these statutes, and others concerned with the operation of a Suffolk County house of correction by the penal institutions department, have become part of the Boston city charter and are subject to being repealed or amended only in accordance with the procedures detailed in § 8 of the Home Rule Amendment — a petition approved by the voters of Boston or the city's mayor and city council or a recommendation by the Governor with a two-thirds vote of each branch of the Legislature. Because the transfer legislation is not the product of action pursuant to § 8 of the Home Rule Amendment,[10] the plaintiffs conclude that the legislation (a) can have no effect on removing Deer Island employees or the deputy commissioner of the penal institutions department from the civil service law, and (b) otherwise does not pass control over the personnel of that facility to the sheriff. The sheriff argues, on the other hand, that the transfer legislation is outside the scope of the Home Rule Amendment because the legislation promotes State, regional, or general concerns rather than concerns restricted solely to Boston. We agree with the sheriff.[11]

The purpose of the Home Rule Amendment is to preserve the right of municipalities to self-government in essentially "local matters" by allowing them to adopt and amend their own charters, while preserving the Commonwealth's right to legislate with respect to State, regional, and general matters. To this particular end, the Home Rule Amendment is to be narrowly construed. See *Arlington* v. *Board of Conciliation*

---

[10] It is agreed that the line item and other provisions of St. 1991, c. 138, that are in dispute were not the subject of a local petition and were passed by the Legislature on a voice vote without recommendation by the Governor.

[11] The sheriff also makes other arguments in support of the validity of the legislation, but we find this argument to be dispositive.

& *Arbitration*, 370 Mass. 769, 773 (1976); *Opinion of the Justices*, 356 Mass. 775, 787 (1969).

In *Hadley* v. *Amherst*, 372 Mass. 46 (1977), we discussed the type of special act preexisting the Home Rule Amendment that could become part of a city or town charter. In that case, the Legislature, in 1912, granted to Amherst the power to take or to purchase land in both Amherst and the neighboring town of Hadley to construct a sewer system. In 1974, when Amherst asserted its right to take certain land in Hadley, Hadley claimed that § 9 of the Home Rule Amendment, which was approved in November, 1966, had made the 1912 special act part of the Amherst charter, and its effect was thus limited to Amherst. We stated, however, that the words " 'to act in relation to cities and towns' [in § 8 of the Home Rule Amendment] do not preclude the Legislature 'from acting on matters of State, regional, or general concern *even though such action may have special effect upon one or more cities or towns*' " (emphasis added). *Hadley* v. *Amherst*, *supra* at 50, quoting *Opinion of the Justices*, 356 Mass. 775, 787-788 (1969). We noted that local sewer systems, with their effect on regional water quality, concerned matters of State, regional, or general concern. *Hadley* v. *Amherst*, *supra*. We concluded that St. 1912, c. 484, singling out Amherst and granting it certain powers in constructing its sewer system, was not a special act within the meaning of the Home Rule Amendment. See *Opinion of the Justices*, 374 Mass. 843, 849 (1978) (reiterating the principle that, if the predominant objective of legislation is to achieve State, regional, or general goals, the Legislature possesses authority unaffected by the restrictions in art. 89, § 8); *Opinion of the Justices*, 357 Mass. 831, 835 (1970).

Consistent with the distinction stated above, we conclude that the transfer legislation predominantly concerns State, regional, and general matters and, while the legislation has some special effect on Boston's penal institutions department, that effect neither diminishes its broader purpose nor serves to make the Home Rule Amendment applicable. Deer Island exists, and functions as, a county facility. In that capacity,

the institution serves four municipalities, of which Boston is one. Operation of county correctional facilities has always been a matter of State and general concern, as demonstrated by the State's regulation of county houses of correction under the provisions of G. L. c. 126, and the supervisory role given in G. L. c. 127 to the Commissioner of Correction over those institutions. The Home Rule Amendment was not intended to prevent the Legislature from "reassign[ing] functions among levels of government as changing times may require." First Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, 1966 Sen. Doc. No. 846, at 9. Reevaluation and reassignment of functions logically should be expected as part of a comprehensive plan aimed at expanding and improving houses of correction which form a constituent part of the Commonwealth's penal system. While the Legislature undoubtedly knew that Boston has been the dominant force in the handling of the county's affairs and in the operation of its house of correction, the more general functions served by Deer Island, as part of a State-wide system of penal institutions, were the direct focus of the Legislature's modernization efforts. The transfer legislation effectuated a reassignment of authority within the Legislature's power to accomplish, by aligning employees of Deer Island with all other similarly situated employees of county penal institutions, under the supervision of one person, the sheriff, thereby enabling him to administer the consolidated system by means of a common employment plan and to use and to transfer employees as the needs of the new system require.[12] In essential aspects, the plan and improvements proposed by the transfer legislation address matters of State, regional, and general concern, considerations which do not implicate

---

[12]The plaintiffs incorrectly rely on *McDade* v. *Department of Insts. of Boston*, 252 Mass. 184 (1925), for the proposition that the city is the county, and that Deer Island employees are city employees. *McDade*, decided in 1925, preceded the Legislature's enactment of St. 1928, c. 389, which clarified that the penal institutions commissioner acts as a county official. See also note 7, *supra.*

the restrictions imposed by the Home Rule Amendment.[13] There is no basis, therefore, for invalidating the transfer legislation as it pertains to Deer Island, or for separating out its civil service portions and declaring them unlawful.

2. The plaintiffs also argue that the civil service portions of the transfer legislation violate the provisions of G. L. c. 29, § 7L.[14] We do not agree.

We pass over the question whether § 7L is an unlawful attempt by one Legislature to dictate to subsequent Legislatures the manner in which constitutionally permissible legislative processes may work. See *Brookline* v. *The Governor*, 407 Mass. 377, 382 n.7 (1990); *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 816 (1987). Even if we assume G. L. c. 29, § 7L, could bind subsequent Legislatures, the transfer legislation does not fall within its scope. By its own terms, § 7L applies only to an "appropriation for expenses of the commonwealth." The second sentence of § 7L defines the term "expenses of the commonwealth" as expenses of running the State government, State debts, local aid, or other items of expense authorized or required by existing law. This language does not encompass all appropriations. *Massachusetts Coalition for the Home-*

---

[13]The Attorney General has filed an amicus brief in support of the validity of the transfer legislation. That brief points out another matter of State, regional, or general concern affected by the legislation. Deer Island is the site of extensive construction under Federal court orders directing the cleanup of Boston Harbor. The transfer legislation was enacted against the background of the Boston Harbor litigation. See generally *United States* v. *Metropolitan Dist. Comm'n*, 757 F. Supp. 121 (D. Mass.), aff'd, 930 F.2d 132 (1st Cir. 1991). The transfer legislation is designed to facilitate the Boston Harbor project by decommissioning the house of correction in order to expedite construction of a new wastewater treatment plant on Deer Island. The sheriff's control over the house of correction is an important part of this over-all process, and his ability efficiently to move personnel under his expanded jurisdiction is a necessary power.

[14]General Laws c. 29, § 7L (1990 ed.), reads as follows: "A law making an appropriation for expenses of the commonwealth shall not contain provisions on any other subject matter. As used in this section, expenses of the commonwealth shall include expenses of the executive, legislative, and judicial departments, interest, payments on the public debt, local aid, and other items of expense authorized or required by existing law."

*less, supra.* The transfer legislation does not appropriate funds authorized or required by existing law and it does not involve funds for payment of public debt or for local aid. The appropriated funds also do not provide monies to be used for expenses of the State's executive, legislative, or judicial departments. In short, § 7L does not apply to the transfer legislation because the legislation provides funds for the expansion and use of county correctional facilities and not funds for the payment of expenses of the Commonwealth.

3. A judgment is to be entered in the Supreme Judicial Court for the county of Suffolk declaring that the challenged portions of item 8910-0030, and §§ 356-363 of St. 1991, c. 138, do not violate the Home Rule Amendment and are not within the purview of G. L. c. 29, § 7L.

*So ordered.*