CLEAN HARBORS OF BRAINTREE, INC. *vs.* BOARD OF
HEALTH OF BRAINTREE.

Norfolk. April 8, 1993. - July 19, 1993.

Present: LIACOS. C J. WILKINS. LYNCH. O'CONNOR. & GREANEY. JJ.

*Health, Board of. Municipal Corporations*, Board of health, Standing to
assert constitutional right, Home rule. *Hazardous Waste. Constitu-
tional Law*, Standing to question constitutionality, Separation of pow-
ers, Home rule. *Statute*, Construction, Appropriation of money. *Prac-
tice, Civil*, Relief from judgment.

A municipal board of health, a government entity, had no standing to
claim that a State statute violated arts. 48 and 63 of the Amendments
to the Massachusetts Constitution. [878-879]

General Laws c. 29, § 7L, had no application to St. 1992, c. 23, § 18,
amending G. L. c. 111, § 150B, where that amendment made no ap-
propriation. [879]

Where no rights had vested under a decision of this court involving a chal-
lenge to a statutory regulatory scheme, the Legislature could properly
amend the statute in issue to accomplish what it had originally intended
without encroaching on judicial power in violation of art. 30 of the
Massachusetts Declaration of Rights. [879-880]

Legislation applicable to hazardous waste treatment and storage facilities
pertained to a matter of State, regional, and general concern and there-
fore was not violative of § 8 of art. 89 of the Amendments to the Con-
stitution of the Commonwealth (Home Rule Amendment). [880-882]

A hazardous waste facility was exempt from the requirements imposed by
G. L. c. 111, § 150B, where it fell within an exempt category as set
forth in an amendment to the statute effected by St. 1992, c. 23, § 18.
[882-884]

A Superior Court judge acted properly, whether under Mass. R. Civ. P. 60
(b) (5) or (6), in granting relief from a judgment on the basis of a
change in the law, i.e., an amendment to the statute on which the judg-
ment was predicated. [884-885]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 19, 1987.

After review by this court, 409 Mass. 834 (1991), and entry of final judgment, a motion for relief from judgment was heard by *Andrew G. Meyer*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce A. Singal* for the defendant.

*Francis S. Wright* for the plaintiff.

*Scott Harshbarger*, Attorney General, *& Peter Sacks*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

LYNCH, J. The board of health of Braintree (board) appeals from an order of a judge in the Superior Court granting Clean Harbors of Braintree, Inc. (Clean Harbors), relief from a judgment ordered by this court and entry of a new judgment in Clean Harbors' favor. We granted the board's application for direct appellate review and we now affirm.

Clean Harbors commenced this litigation in 1987, seeking a declaration that it was not required to obtain a site assignment pursuant to G. L. c. 111, § 150B (1990 ed.), for a hazardous waste treatment and storage facility it was then operating in Braintree. A judge in the Superior Court ruled that the requirements of G. L. c. 111, § 150B, were not applicable because Clean Harbors was a facility in operation before the statute became effective, and granted summary judgment in favor of Clean Harbors. *Clean Harbors of Braintree, Inc. v. Board of Health of Braintree*, 409 Mass. 834, 835 (1991) (*Clean Harbors I*). On appeal, we held that § 150B applied to Clean Harbors and ruled that, in order to continue operations, Clean Harbors must apply for and receive a site assignment from the board. *Id.* at 838. In response to the board's motion for entry of a final judgment after rescript, a Superior Court judge ordered Clean Harbors to file an application with the board for a site assessment pursuant to § 150B.[1] Before the site assignment proceedings were com-

---

[1]The judgment was entered on October 30, 1991. The judgment also provided: "If Clean Harbors shall fail to submit a site assignment application to the Board within such time [thirty days], then the Board may request from this Court such relief as it may deem appropriate. This Court

pleted, however, the Legislature amended G. L. c. 111, § 150B, by providing in relevant part that G. L. c. 111, §§ 150A and 150B, "shall not apply to any hazardous waste facility . . . which was licensed as such . . . as of May first, nineteen hundred and eighty." St. 1992, c. 23, § 18 (the amendment).

Relying on the amendment, Clean Harbors filed a motion in the Superior Court on April 29, 1992, seeking relief from the Superior Court judgment and a stay of any further site assignment proceedings before the board. The board opposed Clean Harbors' motion, arguing that the amendment was unconstitutional, and that it did not apply to Clean Harbors. After a hearing, a judge of the Superior Court allowed Clean Harbors' motion and ordered entry of a new judgment declaring that Clean Harbors was not required to obtain a site assignment under § 150B.

1. The board first argues that the amendment violates arts. 48 and 63 of the Amendments to the Massachusetts Constitution. The board is a municipal agency of the town of Braintree. In *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 610 (1983), we recognized a "long-standing and far-reaching prohibition on constitutional challenges by governmental entities to acts of their creator State." We have followed this rule in a variety of contexts. See *Brookline* v. *The Governor*, 407 Mass. 377, 386 (1990) (Liacos, C.J., concurring) (municipality cannot challenge constitutionality of State statute based on its enactment as "outside" section of the general appropriation act); *Trustees of Worcester State Hosp.* v. *The Governor*, 395 Mass. 377, 380 (1985) (takings claim barred since governmental entities cannot challenge constitutionality of State statutes); *Spence* v. *Boston Edison Co.*, *supra* (agency not permitted to bring due process and equal protection claims). We conclude, therefore, that the board's claims under arts. 48 and 63 are barred by the same prohibition

shall retain jurisdiction of this matter for purposes of implementing the provisions of this Judgment . . . and resolving any disputes which may arise between the parties with respect thereto."

relied on in *Spence* v. *Boston Edison Co., supra.* "Agencies, which are creations of the State, may not challenge the constitutionality of State statutes." *Id.* at 610, citing *Newark* v. *New Jersey*, 262 U.S. 192, 196 (1923).

2. The board reads G. L. c. 29, § 7L (1990 ed.), as invalidating the amendment.[2] We again pass over the question "whether § 7L is an unlawful attempt by one Legislature to dictate to subsequent Legislatures the manner in which constitutionally permissible legislative processes may work." *Gordon* v. *Sheriff of Suffolk County*, 411 Mass. 238, 247 (1991). Although part of St. 1992, c. 23, made appropriations for the expenses of the Commonwealth, the amendment itself made no appropriation of any sort. In *Gordon* v. *Sheriff of Suffolk County, supra,* we considered a challenge to an outside section of the fiscal year 1992 budget (St. 1991, c. 138). Although portions of the statute obviously made appropriations for the Commonwealth, we read the requirements of § 7L as applying to the outside section rather than the appropriations act as a whole. Proceeding in the same manner we conclude that § 7L does not apply to the amendment, since that law makes no appropriation whatsoever.

3. The board next argues that the amendment violates the doctrine of separation of powers articulated in art. 30 of the Massachusetts Declaration of Rights. In *LaGrant* v. *Boston Hous. Auth.*, 403 Mass. 328, 331 (1988), we held that "agencies . . . have standing to challenge the constitutionality of a State statute when it is alleged that the statute represents legislative encroachment on judicial power in violation of art. 30." We, therefore, address the merits of this claim.

In *Clean Harbors I*, we construed G. L. c. 111, § 150B, as it was originally enacted and, "[a]fter examining the statutory history of local site assignment provisions," held that

---

[2]General Laws c. 29, § 7L (1990 ed.), states: "A law making an appropriation for expenses of the commonwealth shall not contain provisions on any other subject matter. As used in this section, expenses of the commonwealth shall include expenses of the executive, legislative, and judicial departments, interest, payments on the public debt, local aid, and other items of expense authorized or required by existing law."

§ 150B applied to the Clean Harbors facility. *Id.* at 835. We also declined to read a "judicially manufactured grandfather clause" into § 150B. *Id.* at 838. Subsequent to our decision, the Legislature responded by amending § 150B, and by stating that § 150B should not apply to facilities that were licensed as of May 1, 1980. We are therefore presented with a statute enacted subsequent to our decision which was based on the court's perception of legislative intent. While the amendment effectively nullified our decision in *Clean Harbors I*, it was not impermissible under art. 30.

Two recently decided cases explain why this is so. In *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Attorney Gen.*, 409 Mass. 336 (1991) (*Mass. Wholesalers I*), we interpreted the "bottle bill," as originally enacted, and held that unclaimed "deposits" belonged to the bottlers and distributors. Thereafter, the Legislature amended the bottle bill, making it clear that bottlers and distributors were to hold the unclaimed deposits in separate accounts on behalf of consumers and, if abandoned, on behalf of the Commonwealth. *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Commonwealth*, 414 Mass. 411, 412 (1993) (*Mass. Wholesalers II*). In *Mass. Wholesalers II*, we held: "The plaintiffs' right to the deposits created under the original bottle bill, as interpreted in *Mass. Wholesalers [I], supra*, does not translate into a similar right to these deposits under. the bottle bill, as now amended." *Id.* at 417. We noted: "[W]hatever interpretation we might give would not affect the Legislature's power to amend or clarify the statute, giving it whatever interpretation the General Court might desire." *Id.*, quoting *Answer of the Justices*, 375 Mass. 790, 793 (1978). Just as the Legislature properly amended the bottle bill to accomplish what it originally intended after our decision in *Mass. Wholesalers I*, the Legislature could also properly amend § 150B to accomplish what it had originally intended, as no rights had vested under our decision in *Clean Harbors I*.

4. The board next argues that the amendment violates § 8 of art. 89 of the Amendments to the Constitution of the

Commonwealth (Home Rule Amendment).[3] A municipality has standing to assert this claim. See *Mayor of Boston* v. *Treasurer & Receiver Gen.*, 384 Mass. 718, 719 (1981) (city and mayor challenged appropriations under Home Rule Amendment); *Hadley* v. *Amherst*, 372 Mass. 46, 48 (1977) (town challenged statute under Home Rule Amendment). We shall assume without deciding that a board of a municipality has such standing as well.

The Home Rule Amendment preserves the right of municipalities to self-government in "local matters," but preserves the Commonwealth's right to legislate with respect to State, regional, and general matters. *Gordon* v. *Sheriff of Suffolk County, supra* at 244. "To this particular end, the Home Rule Amendment is to be narrowly construed." *Id.* The Legislature may act on matters of State, regional, or general concern, even though the action may have special effect on one or more individual cities or towns. *Id.* at 245. *Hadley* v. *Amherst, supra* at 50. *Opinions of the Justices*, 356 Mass. 775, 787-788 (1969). In *Opinions of the Justices, supra* at 788, a majority of the Justices opined that legislation for a multi-purpose stadium, a third vehicular tunnel, a Worcester toll road, and an arena was "at least regional and ha[d] some Statewide effect." In *Hadley* v. *Amherst, supra* at 50, this court held that "sewer systems, with their effect on water quality in a particular area, are a matter of State, regional, or general concern." In *Gordon* v. *Sheriff of Suffolk County, supra* at 245, we were concerned with legislation providing for the transfer of control over the Suffolk County house of correction and held: "[T]he transfer legislation predominantly concerns State, regional, and general matters and, while the legislation has some special effect on Boston's penal institutions department, that effect neither diminishes its broader purpose nor serves to make the Home Rule Amend-

---

[3]Section 8 of art. 89 of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment) provides in pertinent part: "The general court shall have the power to act in relation to cities and towns, but only by the general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two . . . ."

ment applicable." It follows from this line of cases that the waste treatment performed at the Clean Harbors facility is certainly a matter of State, regional, and general concern. We, therefore, conclude that the amendment does not violate the Home Rule Amendment, even if the amendment applies only to the hazardous waste treatment facility in Braintree.

5. The board next argues that Clean Harbors does not fall within the provisions of the amendment. The amendment provides that G. L. c. 111, § 150B:

> "shall not apply to any hazardous waste facility exempt from the licensing requirements of chapter twenty-one C, which was lawfully organized and in existence on May first, [1980], or to any hazardous waste facility which was licensed as such by any division of the [Department of Environmental Protection] as of May first, [1980]."

It is not disputed that Clean Harbors is not exempt from the licensing requirements of c. 21C. Therefore, to fall within the terms of the amendment, the Clean Harbors facility must have been licensed as a hazardous waste facility on May 1, 1980. The board claims that, since the statute in effect on May 1, 1980, required licensing of the "person" operating the facility, and not the "facility" per se, no hazardous waste facility could have been "licensed as such" on May 1, 1980. See G. L. c. 21, § 58, repealed by St. 1979, c. 704, § 1. G. L. c. 21C, inserted by St. 1979, c. 704, § 2.[4] We disagree.

---

[4]General Laws c. 21, § 58, inserted by St. 1970, c. 692, § 2, stated in pertinent part: "No person including the originator thereof shall handle or dispose of such hazardous wastes as are specified by said board without a license from the division of water pollution control."

On November 9, 1979, the Legislature repealed G. L. c. 21, § 58, and enacted G. L. c. 21C. See St. 1979, c. 704, § 1, 2. The repealing act included the following provision: "Any person licensed for the storage or disposal of hazardous wastes under the authority of [G. L. c. 21, §§ 57 and 58] in effect prior to the effective date of this act shall be deemed to be a fully approved facility and shall retain the rights of such approval so long as the person who owns or operates said facility continues to be licensed

415 Mass. 876                                      883

Clean Harbors of Braintree, Inc. *v.* Board of Health of Braintree.

"Our task is to interpret the statute according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Glasser* v. *Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984). A statute should not be construed in such a way as to make it a nullity when a sensible construction is readily available. *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987). The amendment was clearly enacted in response to our decision in *Clean Harbors I, supra,* in order to exclude hazardous waste facilities like Clean Harbors in existence as of May 1, 1980, from the site assignment requirement of § 150B.[5] Assuming that all such facilities operate pursuant to licenses granted to "person[s]" under the statute in effect at the time, the board's argument would render the amendment a total nullity. A more sensible construction, however, exists in the plain language of the amendment itself.

The amendment states that § 150B shall not apply "to any hazardous waste facility . . . which was licensed as such by any division of the department as of May first, [1980]." The parties do not dispute that Clean Harbors fits the definition of "facility." G. L. c. 111, § 150B. G. L. c. 21D, § 2 (1990 ed.). See *Clean Harbors I, supra* at 836. In addition, the board acknowledges that as of May 1, 1980, the Braintree facility was licensed under G. L. c. 21. That the 1980 license was issued to a company whose structure or owner-

_____

under the hazardous waste licensing program administered under this act." St. 1979, c. 704, § 7.

[5]The House ways and means committee's report on the supplemental budget, St. 1991, c. 23, referred to the subject matter of §§ 3 and 8 as "Clean Harbors." The conference committee report recommending passage of those sections also characterized their subject matter as "Clean Harbors." Finally, in his message on c. 23 of April 24, 1992, to the House of Representatives and the Senate, the Governor stated that he was approving § 18 "because [he] recognize[d] the critical need to maintain our current hazardous waste storage and disposal facilities in Massachusetts."

884                               415 Mass. 876

Clean Harbors of Braintree, Inc. *v.* Board of Health of Braintree.

ship may have been different from Clean Harbors is immaterial.[6]

6. Clean Harbors relied on Mass. R. Civ. P. 60 (b) (5) and 60 (b) (6), 365 Mass. 828 (1974), in its motion seeking relief from the judgment in the Superior Court. The Superior Court judge discussed rule 60 (b) (5), but apparently allowed Clean Harbors' motion under rule 60 (b) (6).[7] The board argues that neither rule warranted relief from the prior judgment.

We agree that "[r]ule 60 (b) (6) permits a court to relieve a party from final judgment where there is a post-judgment change in the law having retroactive application." *Brown* v. *Hutton Group*, 795 F. Supp. 1307, 1316 n.7 (S.D.N.Y. 1992).[8] See *Matarese* v. *LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986), cert. denied, 480 U.S. 908 (1987) (postjudgment change in law having retroactive application may in special circumstances constitute extraordinary circumstance warranting vacation of judgment under rule 60 [b] [6]). However, rule 60 (b) (5), which permits the court to relieve a party from a final judgment where "it is no longer equitable that the judgment should have prospective application," also

---

[6]See *Clean Harbors of Braintree, Inc.* v. *Board of Health of Braintree,* 409 Mass. 834, 835 (1991) ("Clean Harbors, originally named Recycling Industries, Inc., has operated its facility on this site since 1976").

[7]In discussing Mass. R. Civ. P. 60 (b) (5), 365 Mass. 828 (1974), the judge stated that he agreed with the proposition that "a subsequent change in applicable law does not automatically mandate relief under rule 60 (b) (5). See *Lubben* v. *Selective Service System Local Board No. 27*, 453 F.2d 645, 651 (1st Cir. 1972)." He then disputed the board's claim that relief under rule 60 (b) (5) was inappropriate because Clean Harbors had violated the equitable requirement of clean hands. He, however, never stated that rule 60 (b) (5) applied. Later, quoting *Brown* v. *Hutton Group*, 795 F. Supp. 1307, 1316 n.7 (S.D.N.Y. 1992), the judge stated that " 'Rule 60 (b) (6) permits a court to relieve a party from final judgment where there is a post-judgment change in the law having retroactive application.' In similar fashion, I request plaintiff's counsel to draft for my consideration an 'Order to Vacate Judgment and Enter a New Judgment Consistent with Section 18 of Chapter 23.' "

[8]We give our rules the construction given to the Federal Rules of Civil Procedure, absent compelling reasons to the contrary. *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975).

contemplates relief from a judgment as a result of a later change in the law such as when a statute is amended. *Wallace Clark & Co.* v. *Acheson Indus., Inc.*, 394 F. Supp. 393, 395 n.4 (S.D.N.Y. 1975), cert. denied, 425 U.S. 976 (1976). We conclude, therefore, that it is of no significance whether the judge granted relief under rule 60 (b) (5) or (6). In either case his action was proper.

*Judgment affirmed.*