Lauriat, Peter M., J.
This action arises from the alleged diversion of funds of Cape Cod Chapter 96 Disabled American Veterans, Inc. of Hyannis (“Chapter 96”) by certain of its officers and leaders. The defendants, Richard A. Trott, Sr. (“Trott, Sr.”), Luiz Gonzaga (“Gonzaga”) and Thomas M. Trott (“Trott”) (the “individual defendants”), and Trustee Defendants Cape Disabled Veterans Home, Inc., Disabled Veterans Association of Cape Cod and the Islands, Inc. and United Veterans Council of Cape Cod and the Islands, Inc. (the “corporate defendants”) (collectively, the “defendants”), have now moved, pursuant to Mass.R.Civ.P. 12, 17 and 19, to dismiss this action. For the following reasons, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
The court takes as true the following facts set forth in the plaintiffs’ Amended Verified Complaint, see Marshall v. Stratus Pharms., Inc., 51 Mass.App.Ct. 667, 670-71 (2001). Plaintiff Disabled American Veterans (the “DAV’ or “National Organization”) is a charitable corporation that was chartered by Congress in 1932 for the purpose of representing the interests of disabled veterans and their families. Plaintiff Disabled American Veterans, Department of Massachusetts (the “Mass. DAV’) is a charitable corporation duly organized under the laws of the Commonwealth. Plaintiffs Kenneth J. Kooyman, Biyan E. Simpson and Morton E. Morin are trustees of the Disabled American Veterans, Cape Cod Chapter 96 (the “trustee plaintiffs”) (collectively, the “plaintiffs”). The individual defendants are or were officers and/or directors of Chapter 96 during all relevant times.[1] According to the complaint, the individual defendants created the corporate defendants for the purpose of diverting funds from Chapter 96.
Every state has a department of the DAV with a Constitution and Bylaws that are consistent with the national charter. The Mass. DAV has over sixty chapters in the Commonwealth, including Chapter 96, which has approximately 800 members. Every member of a DAV chapter must be a disabled veteran and is required to pay membership dues. To ensure that the funds raised by all segments of the DAV are being disbursed and used for the sole benefit of disabled veterans and their families, the Mass. DAV is responsible for overseeing the activities and books of its constituent chapters. To that end, local chapters must prepare and file with the Mass. DAV certain records annually, including records relating to programs run, meetings held, officers elected and financial activities of each chapter. No local chapter, or officer of any local chapter, is permitted to spend DAV funds in any manner except as set forth in the Constitution and Bylaws. Each chapter is obligated to abide by the rules and direction of the Mass. DAV. Chapter 96, in its own constitution, acknowledges its allegiance to and submits itself to the control of the National Organization.
In the summer and fall of 2010, the leaders of the Mass. DAV learned that the individual defendants had failed to file required financial reports or other records for several years. It was also evident that Chapter 96 had failed to hold regular meetings or to run any programs; there was no indication that the Chapter 96 leaders were serving disabled veterans. On October 4, 2010, two officials of the Mass. DAV visited a Chapter 96 meeting to check on activities there. There were only a few officers in attendance and no business was transacted.
Further investigation revealed that Chapter 96 had filed no annual financial report since 2006, and had taken no minutes of meetings for years. As of September 20,2006, the date of the last record on file, Chapter 96 had a “building fund” of $116,238.00 and a checking account of $8,798, for a total of $125,027.00. There was no indication as to what had been done with those funds nor whether any had been used to meet the needs of the chapter members. Accordingly, on *155 October 5, 2010, the Mass. DAV placed Chapter 96 in suspension pending a reconciliation of its records. Chapter 96 and its officers, including the individual defendants, were prohibited from holding a meeting for any purpose other than resolving issues raised by the suspension. The individual defendants were also prohibited from expending any Chapter 96 funds.
Despite numerous attempts to obtain records and financial information, no documents or financial records have ever been produced, and there is no evidence that meetings were held. As a result, on September 6, 2011, the National Organization placed Chapter 96 into trusteeship; control over Chapter 96 and all of its assets were transferred to the trustee plaintiffs. A review of the chapter’s records and accounts revealed that the individual defendants had converted much of the Chapter 96 funds for their own uses, and made improper withdrawals of over $70,000. As to one account from the Cooperative Bank of Cape Cod, only about $2000 of funds that, on October 5, 2010, had exceeded $100,000, were used to benefit disabled veterans.
According to the Complaint, the individual defendants “treated themselves” to trips to Florida, purchases from QVC and other luxuries, and money was diverted to pay the expenses of the corporate defendants. Furthermore, the chapter’s funds were used for cell phone fees, cable and satellite dish fees, DVD rentals, convenience store purchases, and rental cars, all specifically prohibited by the Chapter 96 constitution and the order of the Mass. DAV. In addition, on February 26,2009, the individual defendants obtained a loan in the name of Chapter 96 for $17,350, and a second loan on June 18, 2010 for $13,131.19, with a CD owned by the chapter in the amount of $92,000 as collateral. Defendants Trott and Gonzaga authorized the loans to be repaid from funds in Chapter 96’s checking account. To date, the loans have not been accounted for.
The Complaint alleges that the individual defendants created the corporate defendants as vehicles to “syphon” money from Chapter 96 and avoid scrutiny from the Mass. DAV. They transferred money from the Chapter 96 account to and wrote checks for the benefit of the corporate defendants, including paying rent for at least one entity. Finally, the plaintiffs claim that the individual defendants continued to solicit and accept donations to Chapter 96 through the internet and other media, even after the chapter was suspended and placed into trusteeship. According to the Complaint, monies received therefrom were put into the accounts of one or more of the corporate defendants, or otherwise converted to the personal use of the individual defendants.
The plaintiffs filed their Verified Complaint on December 22, 2011, and their unopposed Amended Verified Complaint on February 14,2012, adding as plaintiffs the Disabled American Veterans and the trustee plaintiffs. The Amended Verified Complaint asserts claims for conversion (Count I); fraud (Count II); negligence (Count III); breach of fiduciary duty (Count IV); and violation of G.L.c. 93A (Count V). This court allowed the plaintiffs’ motion for injunctive relief on January 12, 2012. The defendants have now filed a motion to dismiss, asserting in sum that the Mass. DAV lacks standing to bring this action, and that the plaintiffs have failed to state a claim for a violation of c. 93A.
DISCUSSION
I. Motion to Dismiss the Mass. DAV Pursuant to Mass.R.Civ.P. 17
The defendants appear to contend that the Mass. DAV must be dismissed from this action pursuant to Mass.R.Civ.P. 17 as not a real party in interest. This argument is without merit. “The purpose of the ‘real party in interest’ requirement of Rule 17(a) is to assure that a defendant is only required to defend an action brought by a proper plaintiff and that such an action must be defended only once.” Massachusetts Ass’n of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 297 (1977). Rule 17 is designed primarily to allow parties to join any real party in interest and avoid duplicative adjudication. See, e.g., Berman v. Linnane, 434 Mass. 301, 304 (2001) (listing factors to consider in allowing joinder under 17(a)); Henderson v. D’Annolfo, 15 Mass.App.Ct. 413, 428 (1983).
Even were the court to conclude that it could dismiss a party under Rule 17(a), the defendants’ argument would still fail. Under the DAV National Constitution, Bylaws and Regulations, §8.1, the Mass. DAV is the authorized governing body of the chapters operating within Massachusetts including, of course, Chapter 96. Every chapter is a member of the state department. Id. Each state department is required, as part of its constitution, to include a provision stating that it “recognizes the National Organization known as Disabled American Veterans . . . and affirms its allegiance, and subordination, to the National Organization, its Constitution, Bylaws and all rules, mandates and regulations . . .” Id., §8.5, Para. 2. Section 14.9 provides that “(i]t is the responsibility of departments and chapters to protect DAV assets from theft or conversion.”
Under §6.4, the Mass DAV has the power to suspend or revoke the charter of any chapter for a violation of the constitution or bylaw of the National Organization, or upon refusal to comply with the orders of the state department. Upon revocation of a chapter’s charter, all that chapter’s assets become the property of the Mass. DAV. Id. at Para. 6. Under Art. 10, §6 of the Mass. DAV Constitution, the disposal of any chapter assets must comply with the Mass. DAV policy; a chapter must notify the Mass. DAV of any major transfer any assets. Department Policies, §V.
Furthermore, the individual defendants had certain obligations to both the Mass. DAV and the National Organization under the Constitution and Bylaws of Chapter 96. The Treasurer must send an annual financial report to the Mass. DAV and the DAV. Art. V, *156 §6. All officers must “enforce and sustain . . . the constitution and by-laws of the National and Department Organization,” Art. V, §19, and each member is bound by those constitutions and bylaws. Art. IX, §7. Clearly, Chapter 96, its officers and members must answer to the Mass. DAV, which in turn must answer to the National Organization. The court is hard pressed to discern how the Mass. DAV cannot therefore be a real party in interest. Nor can the court conclude that the inclusion of the Mass. DAV in any way prejudices the defendants. Should the plaintiffs prevail at trial, the plaintiffs may allocate any damages between the three entities as they see fit.
II. Motion to Dismiss Count V Pursuant to Mass.R.Civ.P. 12(b)(6)
To withstand amotion to dismiss under Mass.R.Civ.P. 12(b) (6), a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. a Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level. .. [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006) (“The purpose of rule 12(b)(6) is to permit prompt resolution of a case where the allegations of the complaint clearly demonstrate that the plaintiffs claim is legally insufficient”).
To ascertain the applicability of G.L.c. 93A, §§2(a) and 11 to the interaction between two parties, the court must first assess whether the interaction is “commercial” in nature, and second, whether the parties were both engaged in “trade or commerce,” and therefore acting in a “business context.” Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 22-23 (1997). Chapter 93A, §11 “requires that there be a commercial transaction between a person engaged in trade or commerce [and] another person engaged in trade or commerce.” Id. at 23. See also Belfiger v. Najarian, 381 Mass. 177, 189-90 (1980) (c. 93A provides a remedy for “[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . ..”).
The defendants contend that the alleged actions of the individual defendants did not occur in a business context and thus c. 93A is inapplicable. They point out that, in general, a charitable organization is engaged in trade or commerce when it undertakes activities in furtherance of its mission. The plaintiffs respond that the individual defendants were acting not as volunteers for a charitable institution, but were transacting business by renting offices, maintaining financial accounts in their names, transferring funds into their accounts, and seeking donations for Chapter 96 via the media, and using those donations to fund the corporate defendants. They rely on paragraph 53 of the Amended Verified Complaint, which alleges that the individual defendants engaged in trade or commerce by “syphoning off Chapter 96 funds for personal use, laundering money through [the corporate defendants] . . . and holding themselves out to the community as representing Chapter 96 after they had been suspended
The court is not persuaded. The plaintiffs correctly point out that an entity’s status as a charitable organization is not dispositive as to whether c. 93A applies. See Linkage, 425 Mass. at 23. In Linkage, the Supreme Judicial Court held that Boston University’s deceptive conduct with respect to its transactions with the plaintiff brought it within the ambit of c. 93A, where it had “inserted itself into the marketplace in a way that makes it proper that it be subject to rules of ethical and fair play.” Id. at 27. Here, however, the court sees no “transaction” between the plaintiffs and the defendants that could possibly be construed as engaging in trade and commerce. See Belfiger, 381 Mass. at 189-90. Even if the court were to conclude that the defendants’ actions in some way took place in the context of trade or commerce, the plaintiffs were unquestionably acting at all times in their capacity as charitable institutions. Otherwise put, at no time were the parties acting in a business context with respect to each other. To have standing to assert a claim of unfair and deceptive practices in violation of c. 93A, a plaintiff must be a person engaged in “trade or commerce.” Clean Harbors of Braintree, Inc v. Board of Health of Braintree, 409 Mass. 834, 841 (1991). See also All Seasons Servs., Inc. v. Commissioner of Health & Hosp. of Boston, 417 Mass. 269, 271 (1993) (a charitable organization whose conduct was incidental to it primaiy purpose does not act in a business context and therefore cannot be held liable under c. 93A).
ORDER
For the foregoing reasons, Defendants Richard A. Trott, Sr., Luiz Gonzaga and Thomas M. Trott and Trustee Defendants Cape Disabled Veterans Home, Inc., Disabled Veterans Association of Cape Cod and the Islands, Inc. and United Veterans Council of Cape Cod and the Islands, Inc.’s Motion to Dismiss is DENIED with respect to dismissing Plaintiff the Disabled American Veterans, Department of Massachusetts, and ALLOWED as to Count V.

 Trott Sr. was Commander; Gonzaga was Treasurer; Fattier was Senior Vice Commander and Director; Proc was Senior Vice Commander, First Junior Vice Commander and Director; Trott was Legislative Chairman and Director.